17 So.2d 542

**DANIEL v. STATE.**

**4 Div. 811.**

Court of Appeals of Alabama.

March 21, 1944.

Rehearing Denied April 11, 1944.

Roy L. Smith and A. L. Patterson, both of Phenix City, for appellant.

Wm. M. McQueen, Acting Atty. Gen., and Forman Smith, Asst. Atty. Gen., for the State.

BRICKEN, Presiding Judge.

The indictment in this case charged the defendant, Ocie Mae Daniel, with the offense of murder in the first degree. The trial resulted in the conviction of the defendant of the offense of murder in the second degree and her punishment was fixed by the jury at fifteen years in the penitentiary. Judgment of conviction was duly pronounced and entered, from which this appeal was taken.

The deceased named in the indictment was Jessie Mathews and the indictment charged she was killed by this appellant "by cutting her with a knife," etc.

It is not deemed necessary to discuss the testimony at length.

It appears from said testimony without dispute that on or about the first Sunday in October, 1942, Ocie Mae Daniel and Jessie Mathews, the deceased, had a difficulty in a public street in the city of Phenix City, Russell County, Alabama, in the vicinity of a public resort known as "Ingersoll's Swimming Pool" and that said street led into another public highway or street in said city along which a public bus usually travelled. The defendant claimed that she was on her way to the bus line when the fight between her and the deceased occurred. She further claimed and her testimony tended to show that all she did in said difficulty was done by her in self-defense.

Both the defendant and the deceased were negro women and it is without substantial dispute in the testimony that both of them were cut and wounded in said difficulty.

Upon the trial of this case in the court below, as upon the trial of every criminal case in this State, the burden was on the State to prove beyond a reasonable doubt that some crime charged in the indictment was, in fact, committed, and further that the accused was the person who committed it. Sanders v. State, 167 Ala. 85, 52 So. 417, 28 L.R.A.,N.S., 536.

It was the duty of the State, upon the trial of the case in the court below, to offer evidence tending to establish the causal connection between the wounds alleged to have been inflicted upon the deceased by the defendant and the death of the deceased.

In its effort to prove said causal connection as a part of the res gestae the State introduced a witness, Essie Lewis, who testified that she ran a funeral home in Phenix City and that she knew the deceased during her lifetime; that the body of the deceased was brought to the witness after it was alleged that somebody cut her; that the deceased was dead when she was brought to the place of the witness; that she had. seen knife wounds; that there were some wounds on the body of the deceased; that the deceased had one cut place on her shoulder, on her left side and one

on her right leg across her leg on the thigh; that the deceased was then dead.

Said witness was then asked by the Solicitor the following questions:

"Q. In your judgment did those wounds cause her death?"

The defendant objected to said question and the court overruled the objection and the defendant duly and legally excepted.

The witness answered:

"Those wound were still bleeding when she was brought to my place. She might have died as a result of those wounds. You see, I am not a doctor. She was still bleeding. She might have died as a result of those wounds I saw."

"Q. In your judgment, did she die as a result of those wounds?"

Again the defendant objected and the court overruled the objection and the defendant excepted.

"Q. Just say yes or no if you can."

"A. I don't know. You see I don't know. I know she was dead when she got to my place and she was still bleeding."

At this point the Solicitor stated to the court that he had been taken by surprise, and then the court of its own motion undertook to qualify this witness to express an opinion as to whether or not the death of the deceased resulted from the wounds to which said witness had testified, but without success.

In the admission of the above testimony, over the objection and exception of defendant the trial court was in error, as a result of which the judgment of conviction from which this appeal was taken must of necessity be reversed. An undertaker as such is not an expert on the question as to the cause of death of a deceased. Certainly this witness was not shown to be qualified as an expert. Anderson v. State, 19 Ala.App. 606, 99 So. 778; Rash v. State, 61 Ala. 89.

To authorize a witness to testify as an expert, it must appear by study, practice, experience, or observation as to the particular subject he has acquired a knowledge beyond that of ordinary witnesses. Clemmons v. State, 167 Ala. 20, 52 So. 467.

In White v. State, 136 Ala. 58, 67, 34 So. 177, 180, the Supreme Court, through Mr. Justice Dowdell, said:

"The general rule is that a nonexpert witness should not be permitted to testify

his opinion, but should be confined to a statement of the facts, the jury being as capable, after hearing the facts, to the formation of an opinion as the witness is. The question asked the witness Guest, and in answer to which he gave his opinion, called for matter of expert knowledge; that is, how long the deceased had been dead when witness saw him. The witness was not shown to be an expert, nor is it pretended that he was. The court erred in permitting him to state his opinion against the objection of the defendant."

In Jones v. State, 155 Ala. 1, 46 So. 579 (opinion by late Chief Justice Tyson) the Supreme Court said:

"The defendant was convicted of manslaughter for the killing of one Will Smith. Witnesses Fairley and Bramlett, neither of whom were shown to be experts, were permitted to testify against defendant's objection that in their opinion the wound received by Smith in the stomach, made by a pistol ball fired by defendant caused his death. In this there was error. Only an expert could testify to the fatality of such a wound.

"Reversed and remanded."

The undertaker (who was shown by the testimony to be a negro woman) testified that the deceased might have come to her death as the result of the wounds seen by the witness upon the body of the deceased. This testimony, over the objection and exception of defendant, was allowed by the trial court to go to the jury as competent testimony tending to establish the cause of the death of the deceased, and was the only testimony upon this vital question except that of another non-expert witness, A. L Gullatt, who testified that in his judgment the deceased died from the loss of blood.

The incompetent and illegal testimony of Mr. Gullatt was merely cumulative to the incompetent and illegal testimony of the witness, Essie Lewis. The trial court allowed the testimony of both of these non-expert witnesses to go to the jury. The court charged the jury in the court's oral charge as follows:

"After you take this testimony—and right now I say that you must take it in its entirety, every bit of it—and when you analyze it, dissect it and canvass it and when the testimony commends itself to reasonableness and truth, as you know those qualities to exist, and in that way you reach the conclusion that there is no longer any

sane, actual or substantial doubt of the guilt of the defendant the State will have carried its burden, and the presumption of innocence which obtains up to that point will have been overcome and guilt will have been properly established."

Included in the testimony the jury was instructed by the court to consider was the conjecture, surmise or guess upon the part of Essie Lewis that the deceased might have come to her death as the result of the knife wounds the witness saw upon the body of the deceased.

Other insistences of error need not be discussed.

Reversed and remanded.