112 So.2d 500

David BROWN, Sr.

v.

STATE.

3 Div. 36.

Court of Appeals of Alabama.

March 10, 1959.

Rehearing Denied March 31, 1959.

Jones & Nix, Evergreen, for appellant.

John Patterson, Atty. Gen., and Paul T. Gish, Jr., Asst. Atty. Gen., for the State.

HARWOOD, Presiding Judge.

This appellant stands convicted of murder in the second degree.

The victim of the killing was the appellant's son, eighteen years of age.

The evidence presented by the State tended to show that the appellant had been away from his home for some twenty-four hours previous to the difficulty.

When he returned he had been drinking. The appellant asked his wife for coffee, and was told by her that he was big enough to get it himself.

The deceased and another son, Eugene Brown, were in the room at the time. Eugene told his father, the appellant: "I don't think it is nice of you coming in over the family like this, and about this time he got angry with me."

The appellant then ordered his sons to leave, and they did enter an automobile, though apparently in accordance with their previous plans to attend a meeting.

Before the car left the yard the appellant appeared on the porch of the home with a shotgun. Their mother then called to them to "come here and get this gun before he kills some of the children."

Then according to Eugene Brown:

"A. Well we backed up and pulled back in the yard—and he called my brother Rick—he said 'I'm not speaking to you Rick, I'm talking to Gene.' He said, 'tell Gene to get out, I got this load for him.' So I told my brother, 'I'm not going to get out—you get out and I'll go around the house and come in behind him.' So my brother got out and started toward him and he said, 'Rick don't come any closer,' and when he said that my brother stopped and my daddy shot him.

"Q. How far was he away from him when he shot him?

"A. About as far as from me to that window over there.

"Q. That's about 25 feet?

"A. Yes sir."

The evidence further shows that about a year previous the appellant and deceased had had a difficulty, and the deceased had hit the appellant with the barrel of a shotgun, fracturing four ribs, and his hip, and appellant had been confined in a hospital for over four months as a result of these injuries.

Without objection the Sheriff and a deputy testified that when they arrived at the scene of the killing, some forty minutes

after it occurred, the appellant was intoxicated to the degree that he was mumbling and talking to himself, and they had to assist him to their automobile after arresting him.

In his own behalf the appellant testified that he had not been drinking when he returned to his home on the day in question.

He further testified that after he told his two sons to leave he saw them returning to the house. He was afraid of them because of the previous difficulty, and because the deceased had told him before leaving that if he started any foolishness he would "tear him up."

He obtained his gun, and went on the porch, and as his two sons started toward the house he ordered them not to advance. The deceased replied, "we're going to beat the fire out of you." The deceased ran toward him anyway, and he fired the gun without aiming.

There was also evidence to the effect that the appellant weighed one hundred and twenty-five pounds, and the deceased one hundred and seventy-five pounds.

The only witness testifying as to the distance between appellant and deceased at the time the gun was fired was Eugene Brown, who stated such distance was twenty-five feet. All the other witnesses gave the distance "as far as from here to that wall," or "as far as from here to that window," etc. No further showing as to such distances was made in the record.

■ During the examination of State's witness Eugene Brown the court overruled the defense's objection to the following question:

"Q. Now Eugene, don't answer this question until Mr. Jones has time to object to it—you tell this jury that your father was abusing your mother and the other members of the family there on that occasion?"

The witness answered in the affirmative.

Counsel for appellant argues that to permit the witness to state that appellant had abused his wife, etc. on that occasion would tend to burden the appellant with fault in bringing on the difficulty.

In view of the testimony of the witness prior to this question, in which he gave a detailed account of all that had occurred and transpired between the appellant and his wife, and other members of the family present, error, if any, was not of such a degree as to probably injure the appellant in any of his substantial rights. Supreme Court Rule 45, Code 1940, Tit. 7 Appendix.

■ During the cross examination of State's witness Eugene Brown, he testified that in the prior difficulty between the appellant and the deceased the deceased had struck appellant with a gun barrel, thereby fracturing four ribs, cracking two more, and fracturing appellant's hip. He was then asked how long appellant had stayed in a hospital as a result of such injuries. The witness stated he did not recall, and was then asked "Did he stay a month?" To this question the court sustained the State's objection.

No error resulted in this ruling.

In the first place the witness had stated he did not recall how long the appellant had remained in the hospital.

Further, the court had been liberal in permitting evidence showing details of the former difficulty as might illustrate the gravity thereof. This was all that the appellant was entitled to show. Sanders v. State, 19 Ala.App. 367, 97 So. 294; Higdon v. State, 25 Ala.App. 209, 143 So. 213; Crawford v. State, 35 Ala.App. 513, 49 So. 2d 231. Clearly the nature of the injuries received by the appellant amply illustrated such gravity. In this day of easy hospitalization the length of stay in a hospital sheds less light on the gravity of an injury than a detailed cataloging of such injuries.

Additionally the appellant testified without objection that he was confined in the

hospital because of such injuries for four months and five days.

■ During the cross examination of Eugene Brown he had testified as to the manner of the prior assault committed by deceased on the appellant. On redirect examination it was developed that this witness was not present at the time of the prior assault.

The court thereupon granted the State's motion to exclude all this testimony as to what happened between the appellant and deceased in the prior assault, on the grounds that the witness was not present at the time.

The court granted this motion, and correctly so. We do not think this action excluded this witness' testimony as to the nature of the injuries sustained by the appellant on that occasion, as contended by appellant.

In view of the absence of this witness at the time of the prior assault it clearly was no error for the court to sustain the State's objection to a question addressed to this witness as to whether "you all were interfering with your father and mother at that time."

■ During the cross examination of State's witness Edward Brown, counsel for the appellant had questioned him rather in detail concerning the prior difficulty between the appellant and deceased, the injuries received by appellant, etc.

On redirect examination the court overruled appellant's objection to the following question propounded by the Solicitor:

"Q. He's gone back a year ago about what took place between Douglas Brown and your father—now your father was drinking and raising sand on that occasion too wasn't he?

"Mr. Jones: We object to that if the Court pleases, we object to it on the ground it's irrelevant, immaterial and calls for a conclusion of this witness and it's purely speculative on his part as to whether he was drunk or not."

The appellant having brought in the matter of the previous difficulty, clearly it was competent for the State to seek evidence as to his sobriety at the time.

■ A witness may testify that one was drunk. Wallace v. State, 16 Ala.App. 451, 78 So. 714; Hargrove v. State, 22 Ala.App. 67, 111 So. 587; Mayo v. State, 32 Ala. App. 264, 24 So.2d 769; Durham v. State, 38 Ala.App. 341, 83 So.2d 260.

Thus that part of the question addressed to appellant's condition as to sobriety at the time was admissible.

■ We pretermit consideration of that part of the question "and raising sand," that is whether it was unauthorized opinion evidence, as contended by counsel for appellant, or merely a statement of a collective fact, as contended by the Attorney General. This for the reason where part of a question is good, and part bad, the trial court will not be put in error unless the objection separates the good from the bad. Theodore Land Co. v. Lyon, 148 Ala. 668, 41 So. 682; Security Bank & Trust Co. v. Laney, 214 Ala. 561, 108 So. 367. It should be noted that as the grounds were framed the objection was directed toward that part going to appellant's drunkenness at the time of the prior difficulty.

■ During the cross examination of defense witness Roosevelt Jackson the record shows the following:

"Q. Now just a minute Roosevelt— I'm going to put you on notice here— you swear on your oath to this petit jury that you didn't see Mr. James Brock the sheriff down there,—

"Mr. Jones: We object to that method of examination—he can ask him the question.

"The Court: I overrule the objection.

"Mr. Jones: We reserve an exception.

"Q. Do you here on your oath tell this jury that you didn't see Mr. James Brock there at the home of David Brown, Sr. the night that Douglas Brown was killed, after Douglas Brown was killed? A. I didn't see him."

Counsel for appellant argues that the first question above, which we note was not answered, was but a thinly veiled threat of a perjury prosecution, and that this unnecessary abuse of the witness so prejudiced him in the eyes of the jury that the ruling of the court in the premise constituted reversible error.

While we do not condone the examination pursued by the Solicitor in this instance, we do not think that the above instance should cause a reversal of this judgment.

In the first place, the witness Jackson firmly adhered to his testimony that he had not seen Sheriff Brock at the scene of the killing. It could as easily be argued that his firm testimony, in view of the alleged veiled prosecution for perjury would tend to strengthen the witness in the eyes of the jury rather than weaken him. This renders any harm therefrom speculative.

And too, the scope and extent of cross examination rests largely in the trial court, and wide latitude is permissible in the cross examination of a witness touching his sincerity, etc. Crain v. State, 166 Ala. 1, 52 So. 31; Graves v. State, 166 Ala. 671, 52 So. 34; See also 19 Ala.Dig.Witnesses, ☞267.

Further, the witness Jackson knew he was under oath, and the jury knew he was under oath and an adversary witness to the State. The question of the Solicitor was most probably measured by the jury in this background, and a proper valuation placed on it by them.

Several other points are argued in brief as constituting error. We have examined such points, and have concluded that they are patently without merit, and that no discussion is indicated.

In our opinion this record is free of any error probably injurious to the substantial rights of this appellant, and this judgment is due to be, and hereby is, affirmed.

Affirmed.