178 So.2d 562

**Cleve G. CAZALAS**

v.

**STATE.**

**1 Div. 983.**

Court of Appeals of Alabama.

Oct. 20, 1964.

Rehearing Denied Nov. 17, 1964.

Harry Seale, Mobile, for appellant.

Richmond M. Flowers, Atty. Gen., and John C. Tyson, III, Asst. Atty. Gen., for the State.

JOHNSON, Judge.

The defendant, Cleve G. Cazalas, was tried under an indictment charging manslaughter in the first degree by unlawfully and intentionally, but without malice, killing Madison Van Chapman by cutting him with a knife. The jury found the defendant guilty as charged in the indictment and fixed punishment at six years imprisonment in the State penitentiary.

The tendency of the State's case was as follows:

On the afternoon or early evening of February 4, 1963, the defendant went to a "beer joint" known as the "Rendevous Club". The defendant saw an acquaintance sitting at a table by the door and sat down at the table. This was about six o'clock in the afternoon. After a few minutes Mr. Chapman, the decedent, sat down at the table. The defendant had apparently never met Mr. Chapman before this time. The defendant drank three beers and one drink of whiskey while at the table. Mr. Chapman also had something to drink. After the men had been at the table for awhile, Mr. Chapman asked the defendant if he knew about the trouble that Mr. Chapman's father had with Sidney Hutto. The defendant replied that he knew nothing about the matter. When Chapman insisted that he did, the defendant offered to go to Mr. Hutto's house with Chapman to prove that he did not, and they departed for Hutto's place to settle the dispute.

The defendant and Chapman drove to Mr. Hutto's house and walked into the back yard where Hutto was working on a burst water main. It was after nightfall but the back yard was partly illuminated by a 75 watt light bulb located at the rear of the house. Mr. Hutto explained to Chapman that his dispute with Chapman's father had been settled. Chapman then turned to Hutto, and, referring to the defendant, stated, "it looks like he is trying to blackball us." Hutto testified that the defendant and Chapman then began arguing and that he (Hutto)

walked away from them toward the house when he noticed his wife come to the back door. Hutto testified further that he did not see the fight between the defendant and Chapman which followed because the fight took place in an area behind an outhouse and a tree in the rear of the yard which partially obscured his view, and because it was dark in that area of the yard. Thus, it seems there were no eyewitnesses to the fight in which Chapman received the fatal injury.

The defendant contended that the killing of Chapman was justified by reason of self-defense. The defendant's testimony was substantially as follows:

After Chapman had remarked to Hutto that the defendant "is trying to blackball us", Chapman began taking off his jacket. As the defendant started to walk away Chapman knocked the defendant to the ground with his fist and both men started cursing each other. Chapman again knocked the defendant down with his fist as the defendant attempted to get up. The second time the defendant attempted to get up Chapman knocked him back down by striking him in the forehead with a tub. Then Chapman got on top of the defendant and, after hitting him in the face and head several times with his fists, he put a bar or rod across the defendant's throat and held him down. The defendant testified that he felt as though his eyes were "coming out on stems" and that he was losing his breath. He managed to reach around Chapman's legs and get his knife out (a small knife with a blade not over two inches long) and he started cutting Chapman in order to make Chapman release his grip on the bar or rod. The defendant did not remember whether Chapman had a shirt on at that time or whether it had been torn off, but he did testify that Chapman had removed his jacket. After the defendant had cut Chapman several times, Chapman fell to one side and the defendant immediately got up and left Hutto's property.

Mr. Hutto and his wife testified that Chapman walked to the rear of their house where he fell on the steps. He had on nothing but his shoes and trousers at that time. Chapman died the same night.

The Mobile County Coroner, who was also a physician in Mobile and who the defense admitted was an "expert physician and pathologist", testified that the body of the deceased had twenty-five cut wounds and that the cause of death was a "cut that appeared just above the collar bone very close to the mid-line and this had severed the jugular vessel at this point and had gone through and punctured the left lung. As a result, the left lung collapsed and bleeding from the jugular vein occurred inside the chest as well as covered the surface of the body to a considerable degree outside. The cause of death was recorded and believed to be a stab wound of the neck with a laceration of the jugular vessels and exsanguinating hemorrhage with collapsing of the left lung."

The defendant was 37 years old and weighed 196 pounds. Chapman was 26 years old and weighed approximately 130 pounds. He was described as quite muscular by the coroner and there was testimony that he had been an amateur boxer. The evidence tends to indicate that both men had been drinking excessively.

■ The trial court sustained an objection by the State to a question asked of Detective Clyde Hicks of the Police Department of the City of Mobile as to whether or not a two inch bruise or red spot which the witness observed on the defendant's neck the day after the fatal encounter could have been caused by a rod or pipe being held down across his neck. Defense counsel argues that the witness was qualified to express his opinion on this matter by virtue of the fact that the witness served many years on the police department.

■ It is true that a witness need not be shown to be a practicing physician before he can express an opinion as to cause of death or as to the manner in which a wound was probably inflicted. Phillips v. State,

248 Ala. 510, 28 So.2d 542; Wallace v. State, 16 Ala.App. 451, 78 So. 714. However, before such an opinion may be expressed by a witness who is not qualified as a medical expert, it must be shown by a preliminary examination of the witness that by study, practice, experience, or observation he has acquired a knowledge of the particular matter beyond that of the average witness or juror. Daniel v. State, 31 Ala.App. 376, 17 So.2d 542; Moore v. State, 16 Ala. App. 503, 79 So. 201; Hicks v. State, 247 Ala. 439, 25 So.2d 139; Alexander v. State, 37 Ala.App. 533, 71 So.2d 520; Thomas v. State, 249 Ala. 358, 31 So.2d 71.

■ In the instant case the preliminary examination of Detective Hicks revealed merely that he had served on the police force for a number of years. There is nothing to indicate that he had by study, practice, experience, or observation acquired a knowledge beyond that of the average witness concerning the cause of wounds of the human body. A police officer cannot be regarded as an expert on such matters merely by virtue of the fact that he served on the police force for many years. Thus, there was no error committed by the court in overruling the question propounded to Detective Hicks.

■ The jacket which the deceased had worn on the night of the fatal encounter was placed in evidence. It was spotted with blood stains. A torn shirt identified by the mother of the deceased as belonging to the decedent was also placed in evidence. It had no blood stains. The shirt was found in Hutto's yard two days after the fight. It was found by Mrs. Hutto. Mr. Hutto testified that the yard had previously been searched without discovering the shirt.

The defendant objected to the following part of the solicitor's argument to the jury:

"You come up with a more logical explanation for where this blood was here and why this shirt was torn off and why it wasn't there that night when the police came out. I was not there anymore than you were. Your surmising is just as good as mine. You come in with a better explanation than that as to how the blood was spotted on this jacket and why this shirt was ripped off of him and why this defendant doesn't remember anything about it. * * *"

The defendant contends that the trial court erred in overruling his objection to this part of the argument because it was calculated to impress the jury with the thought that the defendant was required to come forward with more logical evidence than that adduced in order to sustain his plea of self defense. We think the argument is not subject to such an interpretation or effect.

The rule regarding the propriety of jury arguments was stated as follows in Cross v. State, 68 Ala. 476:

"Every fact the testimony tends to prove, every inference counsel may think arises out of the testimony, the credibility of the witnesses, as shown by their manner, the reasonableness of their story, their intelligence, means of knowledge, and many other considerations, are legitimate subjects of criticism and discussion."

■ The solicitor here was pointing out evidence which had been introduced and was arguing a reasonable inference which could be drawn therefrom—namely, that the credibility of the witnesses' testimony was questionable in view of the mentioned evidence. Counsel is allowed wide latitude in commenting on the evidence and in arguing reasonable inferences which may be drawn from the evidence. Cross v. State, supra; Carroll v. State, 36 Ala.App. 59, 52 So.2d 171; Gandy v. State, 29 Ala.App. 485, 198 So. 265.

■ The trial court committed no error by refusing to give the appellant's requested Charge 10, which reads as follows:

"I charge you, gentlemen of the jury, that a citizen may repel force by force

in the defense of his person against one who manifestly intends or endeavors by violence or surprise to take his life or do him great bodily harm, and if the defendant was entirely free from fault in bringing on the difficulty and did not enter the fight willingly, and in good faith believed that he was in imminent peril, the defendant was not obliged to retreat and under such circumstances the defendant had the right to take the life of the deceased."

This charge is the same charge as Charge B considered by our Supreme Court in the case of Johnson v. State, 257 Ala. 644, 60 So.2d 818, and which was there held to have been refused without error for the reason that it fails to base or hypothesize the jury's conclusion upon belief "from the evidence". As was, pointed out in the Johnson case, "It is the established rule in this State that it is not reversible error either to give or to refuse a charge which fails to hypothesize the jury's belief 'as from the evidence'."

No error appears in the record. The judgment is due to be and the same is hereby · ·

Affirmed.