279 So.2d 552

**J. D. SNOW, alias**

v.

**STATE.**

**6 Div. 433.**

Court of Criminal Appeals of Alabama.

April 3, 1973.

Rehearing Denied May 1, 1973.

Hugh A. Locke, Jr., Birmingham, for appellant.

William J. Baxley, Atty. Gen., and David W. Clark, Asst. Atty., Gen., for the State.

HARRIS, Judge.

Appellant was convicted of murder in the second degree and his punishment fixed at twenty years imprisonment in the penitentiary. Prior to arraignment it was ascertained that appellant was unable to employ counsel and the court appointed a

lawyer to represent and defend him in the court below, and he is represented on this appeal by the same lawyer. This case was argued and submitted on January 25, 1973.

The homicide occurred around 3:00 A.M. on the morning of January 10, 1971, at the home of Reese Dockery, 1826–14 Court, North, in Birmingham, Alabama, which was two houses from the residence of appellant's parents with whom he was living. There were six people at the Dockery home on the night of the homicide, viz. Mr. and Mrs. Dockery, Roy Gene Whitman, Terry Leach, appellant and the deceased, Emmett L. Whitman. All were drinking and continued to drink up to and at the time of the killing except the Dockerys, who retired to their bedroom a few minutes before the shooting. Just before the shooting, appellant told deceased he was going to get a gun and kill him. Appellant and Terry Leach left and went to appellant's father's home to get a shotgun. His father had the shotgun in his bedroom and appellant got his hands on the gun when his father waked up and asked him what he was doing. Appellant told his father that he needed the gun to pawn so that he could get something more to drink. His father told him he couldn't take his gun and appellant handed the gun back to his father whereupon Terry Leach grabbed the gun and wrestled it from the elderly Snow, slinging him to the floor, and ran from the house followed by appellant. Meanwhile, deceased lay down on the couch in the front room of the Dockery house and Roy Gene Whitman was sitting in a chair next to the front door. According to the testimony of Roy Gene Whitman, Terry Leach opened the front door of the Dockery home and went to the bedroom of the Dockerys. A few minutes later there was a knock on the front door and Roy started to answer the knock when the deceased got off the couch and put his hands on Roy's shoulder and told him to keep his seat, that he would answer the door. When the deceased opened the door, Roy heard a shotgun blast and saw deceased fall to the floor, and appellant immediately walked in the home with a twelve gauge shotgun in his hand. Roy Gene Whitman ran out of the house to call the law officers.

When the officers arrived, appellant was placed in the backseat of a patrol car and Detective C. H. Newfield of the Birmingham Police Department got in the backseat with appellant and gave him the *Miranda* rights from a printed card, now generally carried by law enforcement officers. After giving appellant his "rights" and asking him if he understood these rights and receiving an affirmative answer, the officer asked him what happened. Appellant told Newfield that he was not sorry that he had shot the victim; that he would do it all over again; and that the reason he shot him was because the victim had hit his father. Before this confession was admitted in evidence, the trial court had a voir dire examination conducted out of the presence of the jury. After such examination the trial judge concluded the confession was voluntarily made and the same was submitted to the jury for its consideration.

Appellant testified on the voir dire that he had been drinking off and on during the day and that he was drunk and didn't remember too much that transpired on the occasion of the homicide. He specifically denied that he was guilty of any wrongdoing and was not guilty of the shooting.

After appellant was carried to the station house, Detective Newfield interviewed him again around 6:00 A.M. A stenogra-

pher was present to record this interview. Before questioning appellant, Newfield again read him his "rights". This confrontation follows:

"BIRMINGHAM POLICE DEPARTMENT 1/12/71
8886
January 11, 1971

"This is the statement of J. D. Snow, WM, 1818 14th Ct. No., made in Room 119, City Hall, January 10, 1971, in the presence of Det. C. H. Newfield and Det. A. Wallace, regarding the homicide of Emmett Louis Whitman.

"RE:               MURDER
"VICTIM:           Emmett Louis Whitman, WM
"DEFENDANT:        J. D. Snow, WM
                   1818 14th Ct. No.
"LOCATION:         1826 14th Ct. No.
"DATE & TIME:      Approximately 3:21 a. m.;
                   1/10/71
"OFFICERS:         Det. C. H. Newfield

(Det. Newfield interrogating)

"MIRANDA WARNING

"Q. What is your name?
"A. J. D. Snow.
"Q. How old are you?
"A. 29.
"Q. Are you married or single?
"A. Single.
"Q. Are you employed?
"A. No.
"Q. What is your address?
"A. 1818 14th Ct. No.
"Q. On January 10, approximately 3:25 a. m. were you present at 1826 14th Ct. No.?
"A. No, I was not.
"Q. What time did you get there?
"A. 7:30 p. m.
"Q. J. D., tell me in your own words what happened tonight before our arrival.
"A. This Terry and I go over to the house. We started playing around. Terry grabbed the shotgun. Then I put the shotgun back over against the wall. I don't know where Terry went. I went and got some wine. They were in bed asleep. I go and get the wine, and when I started out the door, I heard a boom and by the time I got out that door down to the stairs, the police get me and said I had killed somebody. This punk (Roy Whitman) in here said he saw me do it. I had done nothing.

"s_____

"WITNESSES:

_____

CAROL MOORE, STENOGRAPHER"

After the same was transcribed, it was presented to appellant but he refused to sign it.

Appellant did not testify before the jury and the only witness offered in his defense was his mother, Mrs. Lottie Snow. Her testimony was so mixed up and confusing that it is impossible to unravel the narrative told by her and make any sense out of it at all. The trial judge virtually told her the same thing. She was arrested the morning of the homicide for public drunkenness and this is probably the best explanation of her testimony.

At the conclusion of the state's case in chief, appellant made a motion to exclude the state's evidence alleging there was insufficient evidence of any premeditated action and malicious intent, stating:

"That the evidence is equivocable and ambiguous, and, when viewed against the presumption of innocence and the burden of proof, there is a lack of any evidence of any intent sufficient to convict the defendant, certainly, of murder in the first degree, murder in the second degree, or manslaughter in the first degree.

"That the evidence has not sufficiently placed the defendant at the scene.

"Three, that the evidence is insufficient to show that the defendant was guilty of firing the shot that wounded or killed the victim.

"Primarily, I feel that this intent is lacking, that there isn't any evidence of premeditation, or any intent."

There was no error in overruling the motion to exclude. There was an unimpeached eye-witness to the shooting. Besides, when appellant was interviewed at the scene, he confessed the killing and told the officer his reasons for doing so—that deceased had struck his father. The evidence is uncontradicted that the deceased had not hit appellant's father.

There was no error in admitting photographs of the deceased and of the *lo-*

*cus in quo* where the proper predicate was laid. It has been held many times that gruesomeness is not ground for excluding evidence consisting of photographs if it has a reasonable tendency to prove some material fact in issue or shed some light upon some material inquiry, and if it illuminates the issues in any way, even though possessing a tendency to inflame the minds of the jury. McKee v. State, 33 Ala.App. 171, 31 So.2d 656; Grissett v. State, 241 Ala. 343, 2 So.2d 399; Rowe v. State, 243 Ala. 618, 11 So.2d 749. Such photographs are admissible as shedding light upon the character and location of the wounds on the body of the deceased though they constitute cumulative evidence upon a matter not disputed. Wilson v. State, 31 Ala.App. 21, 11 So.2d 563; Weems v. State, 222 Ala. 346, 132 So. 711; Hyche v. State, 22 Ala.App. 176, 113 So. 644; Pierce v. State, 28 Ala.App. 40, 178 So. 248.

A deputy coroner of Jefferson County rendered an opinion as to the cause of death. He said death was due to a shotgun wound in the area of the heart. By preliminary examination it was shown that this witness was qualified by knowledge and experience to give such opinion. Cazalas v. State, 43 Ala.App. 6, 178 So.2d 562; Anderson v. State, 40 Ala.App. 509, 120 So.2d 397.

There was no error in permitting Detective Newfield to testify that Mrs. Lottie Snow, mother of appellant, was drunk on the morning of the homicide. He saw and observed her. She was staggering and smelled strongly of the odor of alcohol. Brown v. State, 40 Ala.App. 226, 112 So.2d 500; Durham v. State, 38 Ala. App. 341, 83 So.2d 260.

Appellant forcibly argues that the state, by calling Newfield as a rebuttal witness, after appellant had elected not to take the stand, to relate his conversation with appellant at the scene of the crime, violated his constitutional rights to remain silent as it "was an indirect compulsion forcing the defendant to take the stand to refute these

statements." This novel argument continues:

"Further, it was a very subtle and indirect means of commenting and pointing up to the jury that the defendant had not taken the stand in his defense. It is forever too late to withdraw such an inferred accusation for even had defense counsel come back in rebuttal and put defendant on the stand, nevertheless, irretrievably and irrevocably the fact had been brought out that defendant originally had not chosen or elected to take the stand in his own defense, and the jury could not wipe that from their minds. It was the deliberate calculated effect of the actions of the state in presenting the case as it did, and is reversible error."

The short answer to this assertion of appellant's astute counsel is that the order of proof and rebuttal testimony rest largely in the sound discretion of the trial judge, and this rule applies to testimony which more properly should have been offered as part of the case in chief. Emerson v. State, 281 Ala. 29, 198 So.2d 613; Nichols v. State, 276 Ala. 209, 160 So.2d 619; Blackwell v. State, 264 Ala. 553, 88 So.2d 347; Moates v. State, 40 Ala.App. 234, 115 So.2d 277.

Newfield testified that when he got in the backseat of the patrol car to give appellant the *Miranda* rights, he smelled the odor of alcohol but appellant was not drunk; that he responded intelligently to all the questions propounded to him.

What we said in Anderson v. State, 45 Ala.App. 653, 235 So.2d 902, is applicable here:

"Evidence was heard on the voluntariness of the alleged confession out of the presence of the jury in accordance with Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908. There was ample evidence, even though conflicting, from which the trial judge could conclude that appellant was not intoxicated to the extent of mania. We conclude that the trial judge did not abuse his discretion in admitting the alleged confession for the jury's consideration. Intoxication which would affect the voluntariness of a confession is primarily a question of fact which first addresses itself to the trial judge to determine admissibility and later to be submitted to the jury for whatever consideration it may deem appropriate.

"The rule is well established in this jurisdiction that intoxication short of mania or such an impairment of the will and mind as to make the person confessing unconscious of the meaning of his words will not render a confession inadmissible. Warren v. State, 44 Ala.App. 221, 205 So.2d 916, cert. denied 281 Ala. 725, 205 So.2d 920; Ray v. State, 39 Ala.App. 257, 97 So.2d 594; Smith v. State, 25 Ala.App. 297, 145 So. 504; Eskridge v. State, 25 Ala. 30."

See also Ray v. State, 39 Ala.App. 257, 97 So.2d 594; Elrod v. State, 281 Ala. 331, 202 So.2d 539.

Appellant complains of error in the action of the court in not permitting him to show the efforts he had made in securing the attendance of Terry Leach as a witness for the defense. In Barber v. State, 11 Ala.App. 118, 65 So. 842, the Court of Appeals said:

"The court declined to permit the defendant to make proof to the jury to the effect that a certain named witness he desired had been subpoenaed by him and that he had made every effort to get such witness at the trial. The matter of the witness' absence was one to have been addressed to the court, before entering upon the trial, on an application for continuance, and was entirely immaterial to any issue before the jury."

There were a number of refused charges. The principles of law in the refused charges were substantially covered in the court's oral charge to the jury or in the given charges. Some were affirmative

in nature, some do not state correct principles of law and others were abstract. There is no error in the refusal of these charges.

We have carefully searched the record for errors affecting the substantial rights of appellant and have found none. The case is due to be and is hereby affirmed.

Affirmed.

All the Judges concur.