Appellant was charged by indictment with first degree murder. At arraignment, in the presence of his counsel, appellant entered a plea of not guilty. The jury returned a verdict of guilty as charged and fixed the punishment at imprisonment in the penitentiary for life. Appellant gave notice of appeal. A free transcript was ordered and trial counsel was appointed to represent him on this appeal.
This is certainly a bizarre case, but the confluence of events over a five or six year period formed the basis for the arrest and conviction of appellant of the crime of murder in the first degree and a sentence to life imprisonment in the penitentiary. The evidence presented by the State was extremely conflicting with that presented by the defense. The motive for the slaying was weak but not inconclusive. Only a jury could unravel the inconsistencies and arrive at a verdict. It is not within the province of this Court to pass on the truthfulness or falsity of the evidence presented in this case.
A motion for new trial was timely filed on grounds, among others, as follows: (1) the verdict was against the weight of the evidence; (2) the admission of the oral confession, reduced to writing by officers, was error in that it was unsigned by appellant and was not shown to have been voluntary; (3) newly discovered evidence, i.e. affidavits incriminating someone other than appellant in commission of the offense charged, warranted a new trial; (4) the trial court erred in allowing evidence of appellant's prior criminal record and in denying appellant's motion for mistrial based thereon; and (5) the trial court erred in allowing improper rebuttal testimony. Following an evidentiary hearing, the motion for new trial was denied.
The coroner of Etowah County testified that on June 7, 1971, he saw the body of Harvey Mack Elkins at the Boaz-Albertville Hospital between 5:00 and 5:30 a.m. The cause of death was determined to be a gunshot wound to the head. The gun had been fired at close range. He further testified that the incident occurred in Etowah County at a mobile home in the Mountainboro Community. The approximate time of the shooting was 4:45 a.m. and Elkins was dead on arrival at the hospital at 5:30 a.m.
The key witness for the State was Linda Faye Nunley, appellant's ex-wife. She testified that six months to a year prior to the shooting, she and appellant visited in the trailer home of Mack and Evelyn Elkins. Evelyn Elkins, the wife of the deceased, was also appellant's sister. Ms. Nunley testified that Evelyn Elkins had been severely beaten by her husband and asked appellant on that occasion if he knew of anybody she could get to kill Mack Elkins. He replied that he would check around. *Page 570 
Ms. Nunley testified that on Sunday, June 6, 1971, the day before the shooting, Wendell and Jewel Tinker spent the afternoon at the McBryars' trailer in Chattanooga. Appellant and Wendell drank beer all afternoon while Ms. Nunley made pies at her mother's next door. The two couples left Chattanooga around 10:00 p.m. and drove to the Tinkers' home in Higdon, Alabama, to spend the night. Ms. Nunley testified that, shortly after they arrived, appellant came and told her that he and Tinker were going to kill Mack Elkins and the two men left. About daylight, appellant came in, woke her up and told her that he and Wendell had "blowed Mack's head off." Appellant told her that he had waited in the car, heard the shot and that Tinker came back and said he had shot him.
Ms. Nunley further testified that at the funeral home she overheard appellant ask Tinker, "How can you stand to look at him after doing that?" Tinker reportedly replied, "The only thing that bothers me ___ That really bothered me about it is when they came and told me he had been shot they didn't say he was dead and I thought maybe I hadn't killed him."
On cross-examination, Ms. Nunley testified that about daylight or a little after on the morning of June 7, Gene Edgeworth came to the Tinkers' trailer and said that someone had shot Mr. Elkins. She was unable to remember the exact time, but it was established that at the preliminary hearing she had testified it was between 5:00 and 6:00 a.m. EDT and that Edgeworth had arrived about twenty minutes after appellant had returned to the trailer.
The witness testified that after Mack Elkins was killed, she left her husband because she was afraid he was going to kill her. She subsequently reported the murder to several law enforcement agencies and, finally, to the Etowah County Sheriff's Department. She also testified that she told Evelyn Elkins in appellant's presence that appellant had killed her husband.
Ms. Nunley denied that she reported the murder to the Etowah County Sheriff's Department a few days after having a fight with appellant's present wife, Mary McBryar, or that she reported the incident because she was mad at the appellant. She stated that appellant was already in prison serving twenty years for kidnapping at the time.
At this point in the proceedings, testimony was heard outside the presence of the jury on the admissibility of appellant's confession. Don Longshore, Etowah County investigator, testified that on September 11, 1977, he and Roy McDowell talked with appellant in the Jefferson County Jail. He testified that appropriate Miranda warnings were given, that appellant was not threatened or offered any hope of reward to make a statement, and that he then made an oral statement. He testified that Sheriff Felton Yates of Etowah County was then called in, appellant was again read his rights, and repeated the oral statement.
Officer Longshore testified that appellant stated he had no objection to Longshore writing the statement down but that he refused to sign the statement. The substance of appellant's statement was that he and Wendell Tinker left Tinker's home in the early morning hours of June 7, 1971, and drove to Mack Elkins' trailer. Tinker had a shotgun. Appellant dropped him off, and three hours later drove back and picked him up near Elkins' home. Tinker told him that he had killed Mack Elkins. After they returned to Tinker's home, one of the neighbors came over and told them someone had killed Mack Elkins.
On cross-examination, Longshore denied that at the time of the statement appellant was offered immunity if he would testify against Tinker.
Roy McDowell, chief investigator for Etowah County, and Sheriff Felton Yates testified, both substantiating the testimony of Don Longshore.
Appellant, Sherman McBryar, testified that his rights were not read to him until Sheriff Yates entered the room and that Don Longshore offered him immunity if he would "tell on Wendell Tinker." Appellant testified that Longshore already had a *Page 571 
statement written out, that he did not read it, did not sign it, and he did not make any statement at that time.
On cross-examination, appellant testified that he was presently incarcerated in the Federal Penitentiary in Atlanta, serving twenty years for kidnapping.
Following this testimony, appellant's counsel moved to suppress the confession, which motion was denied.
Don Longshore then repeated his testimony before the jury with the State again laying the Miranda and voluntariness predicates. The statement, written down by Longshore, along with the waiver of rights form, both unsigned but witnessed by all three officers, was admitted into evidence.
Roy McDowell and Sheriff Felton Yates repeated their testimony before the jury, again substantiating the testimony of Don Longshore.
Brenda Kaye Smith, Linda Nunley's sister, testified that, at Christmas of 1974, she overheard appellant tell Linda Nunley that "if she didn't act like a lady, she would get her head blowed off like we blowed Mack's off."
Mark Jones, Linda Nunley's stepfather, testified that he was in appellant's home on Monday, the day of the shooting and noticed one of appellant's guns, a double-barreled shotgun, was missing. On cross-examination, Mr. Jones testified that he did not recall his wife and Linda Nunley baking pies on the Sunday before the shooting at his home and he did not remember Wendell Tinker being there on that day.
Lorene McBryar, mother of appellant and Evelyn Elkins, testifying for appellant, stated that she spent the night at the Elkins' home on June 6, 1971. As Elkins was leaving for work about daylight on June 7, she heard a loud noise. She and Evelyn both ran to the door and Mack Elkins was lying on the ground outside. Evelyn went to her husband and sent the witness to a neighbor's to call an ambulance. Ms. McBryar did not know of any trouble between Mack Elkins and appellant and stated that they were best friends.
Roy McDowell testified that the distance between the Tinkers' home and the trailer of Mack and Evelyn Elkins was sixty-seven miles and that it took an hour and fifteen minutes at 60-70 miles per hour to drive that distance.
Evelyn Elkins, widow of Mack Elkins, testified that about a year before her husband was killed he hit her in the mouth, injuring her. She denied that she asked appellant to have him killed because he hit her or that she had ever asked anybody to kill him. She stated that they had had no serious marital difficulties. To this witness's knowledge, Mack Elkins had never had any trouble with either appellant, Sherman McBryar, or Wendell Tinker.
Ms. Elkins testified that on the morning Mack Elkins was killed, she got up at 5:00 EDT, her husband left for work about daylight and after he went out the door, she heard two shots. She went to him, realized that he had been shot, and sent her mother for an ambulance.
On cross-examination she testified that she did not see anyone leaving after her husband was shot. She denied that Linda Nunley had ever told her that appellant had killed her husband and stated that she did not know appellant and Wendell Tinker were involved until Tinker was arrested.
The witness could not recall but did not deny having told police in an earlier statement that her husband was shot at 4:30 a.m. She stated that that would have been central time.
Jewel Tinker, wife of Wendell Tinker and the sister of appellant and Evelyn Elkins, testified that, on Sunday, June 6, 1971, she spent the day at home, not at the McBryars' in Chattanooga. Appellant and Linda Nunley spent the night at her house. She testified that Wendell Tinker and appellant did not leave the trailer at any time that night and that she would have known if they had. She woke her husband to go to work at 5:45 a.m. EDT on Monday and got appellant and Linda up around 6:15. Gene Edgeworth came over to tell them Mack Elkins had been shot at 6:25. *Page 572 
Wendell Tinker testified, substantiating the testimony of his wife about the events of Sunday, June 6, 1971. He testified that he did not leave his home that night and that he did not kill Mack Elkins. A time card was introduced which showed that on Monday, June 7, Wendell Tinker punched in at work at 7:22 a.m. EDT, in Trenton, Georgia, at the Corley Manufacturing Company. Mr. Tinker testified that he arrived at work at 6:45 and unlocked the building before he punched in. He denied the alleged conversation with appellant at the funeral home. On cross-examination, Tinker was shown appellant's statement and stated that it was not true.
Wesley Chaney testified that he was working with Wendell Tinker on June 7, 1971, and substantiated Tinker's testimony about the time he arrived at work.
Patricia Ann Smith, daughter of Jewel and Wendell Tinker, testified that she spent the night in the Tinkers' home on Sunday, June 6, 1971, and that she slept on the couch beside the front door that night and that no one left the trailer during the night.
Mary McBryar, appellant's wife, testified that in late February or early March of 1977 she had a fight with Linda Nunley. Following the fight, Linda Nunley's sister and brother-in-law, Brenda and George Smith, called the witness on the phone and threatened her. She testified that Brenda Smith told her in effect that they were going to blame Sherman McBryar with the murder of Mack Elkins.
Appellant, Sherman McBryar, testified in his own behalf. He testified that he was currently serving a sentence in the Federal Penitentiary in Atlanta on a charge of kidnapping. Appellant denied that he spent Sunday, June 6, 1971, at his house in Chattanooga and testified that he and his ex-wife, Linda Nunley, spent the day at Wendell and Jewel Tinkers' house in Alabama. They spent the night at the Tinkers' but appellant denied that he ever left the home that night.
Appellant further testified that he and Mack Elkins were very close friends, that Evelyn Elkins had never asked him to find someone to kill Mack Elkins, and that he and Wendell Tinker did not kill Mack Elkins. He testified that the statement in evidence allegedly made by him was already prepared when it was brought to him in the Jefferson County Jail by Don Longshore. He did not make the statement and he refused to sign it. He further testified that he was told, "If I would tell on Wendell, they would cut me scot free." Appellant denied the alleged conversation with Wendell Tinker at the funeral home.
Brenda Turner, Evelyn Elkins' daughter, testified that she was at the Elkins' home when Mack Elkins was killed, substantiating the testimony of Evelyn Elkins and Lorene McBryar as to the circumstances of the killing.
James Cecil McBryar, appellant's brother, testified that he was at the funeral home with Wendell Tinker and appellant and that he did not hear any conversation take place about having killed Mack Elkins.
Wanda Joyce Bailey, appellant's sister, testified that in October of 1977 Linda Nunley told her that the man who shot Mack Elkins was "from up north."
Ralph Boutwell testified, over appellant's objection, for the State on rebuttal that on the morning of June 7, 1971, he was at his mother's house across the road from Mack Elkins' trailer. At 4:00 a.m., he heard two shots which came from the direction of the Elkins trailer, that he looked out the window but it was dark and he couldn't see anything.
Appellant first contends that the verdict of the jury was clearly contrary to the great preponderance of the evidence. Eight witnesses testified for the State and twelve for the defense. Many of these witnesses were related by blood or marriage to the appellant, the key prosecuting witness, the deceased, and to each other. The appellant himself was the brother-in-law of the murder victim, Mack Elkins. Family members were divided, some testifying for the State, some for the appellant. *Page 573 
Every material issue raised at the trial was placed in sharp conflict by the testimony of the witnesses. The State's evidence, primarily appellant's confession and the testimony of Linda Nunley, tended to show that appellant killed Mack Elkins because he had beaten his wife, the appellant's sister.
Appellant recanted the confession at trial. He also relied heavily on showing that it was physically impossible for him to have killed Mack Elkins and driven the 67 miles back to the Tinkers' home by the time Linda Nunley testified that he arrived. The evidence regarding the times at which critical events occurred was hopelessly complicated by the fact that some of the testimony was based on Central Daylight Time and some based on Eastern Daylight Time. Appellant contends on appeal that the State's evidence showed that appellant shot Mack Elkins at 4:30 a.m., Central Daylight Time, and arrived back at the Tinkers' home 67 miles away at 4:40 a.m., CDT.
The testimony of the various witnesses as to the times involved was confusing and contradictory. Due to the complexity of this evidence, it is apparent that the witnesses merely got their times confused.
There is nothing in the record which would allow this Court to conclude that the jury did not carefully assess the testimony of each witness, or that it did not fairly decide the conflicts in time against appellant. Conflicting testimony is for the jury and a verdict rendered thereon will not be disturbed on appeal. Young v. State, Ala. Cr.App.,346 So.2d 509.
Appellant next contends that the admission into evidence of the confession was error and sets forth two grounds in support of this argument: (1) That the confession, allegedly orally made and reduced to writing by an officer, was inadmissible as it was not signed by appellant, and (2) that the State failed to prove that the confession was voluntarily made. This contention is without merit. The law does not require that a confessory statement be signed by the defendant.
The evidence of appellant's confession consisted of the writing by Don Longshore of what appellant told the officers as well as the testimony of the officers who heard the statement. All three officers testified when and where the statement was made and who was present. There was testimony on voir dire and again in the presence of the jury that the appropriate Miranda
warnings were given, that appellant said he understood his rights, and that no promises or threats or other inducements were made to appellant to induce the statement.
Both a written confession and the testimony of a witness who heard the statement are primary evidence. In Elkins v. State,250 Ala. 672, 35 So.2d 693, our Supreme Court said:
 ". . . All that the accused voluntarily wrote or said which is material to the charge, is competent against him because it is his own admission and against his own interest. The witness testifies not to what the writing contains, but as to what he heard the defendant say. . . ."
Appellant's contention that his statement was inadmissible because it was not signed is without merit. Regardless of the admissibility of the unsigned written statement made by appellant, the proper predicates were laid for the testimony of the officers as to what they heard and that testimony was competent evidence against him. Elkins, supra.
The evidence of voluntariness offered by the State was controverted by appellant's recantation at trial. The jury heard both the State's testimony that the statement was voluntary and appellant's testimony that he did not make a statement, as well as the testimony of appellant and Wendell Tinker that the events described in the statement never occurred. Where the evidence on the circumstances surrounding a confession is conflicting on voir dire, the trial judge must decide on its admissibility. If the confession is admitted, controverted testimony for the accused goes to the jury on its credibility. Godfrey v. State, Ala.Cr.App., 333 So.2d 182. *Page 574 
Appellant contends the trial court erred in denying the motion for new trial based on newly discovered evidence. This evidence consisted of affidavits of two inmates in the Atlanta Federal Penitentiary which asserted that someone other than appellant killed Mack Elkins. These affidavits were received on the day after appellant was convicted and the trial court continued the hearing on the motion for new trial to allow appellant's attorney to depose the affiants in Atlanta.
The depositions and the affidavits were considered on the motion, following which the trial court denied the motion for new trial. The evidence tending to incriminate a person other than appellant for the murder of Elkins was based solely on statements made to the two inmates by a fellow bank robber that he had killed Mack Elkins for withholding money from a bank robbery.
New evidence tending to prove another person committed the offense for which the accused was convicted may be grounds for a new trial. Such evidence must, however, be admissible on retrial of the cause. Houston v. State, 208 Ala. 660,95 So. 145. Evidence of the guilt of another cannot be proven by a confession or statement by another that he committed the offense with which the accused was charged. Such evidence is mere hearsay. Goldsmith v. State, 232 Ala. 436, 168 So. 547;Prince v. State, Ala.Cr.App., 356 So.2d 750.
Appellant, relying on Houston, supra, attempts to circumvent the hearsay element of the statements by arguing that they contradict the appellant's confession. There is no principle of law upon which this contention will stand. The affidavits inHouston were admitted, not to prove the guilt of the declarant, but to impeach his own testimony against the accused. That rule will not serve to allow the admission of hearsay evidence to contradict the confession of the accused by proving the guilt of another.
The appellate courts look with disfavor on motions for new trials based on newly discovered evidence and the decision of the trial court will not be disturbed absent abuse of discretion. Zuck v. State, 57 Ala. App. 15, 325 So.2d 531. The trial court in the case at bar ordered a continuance to provide appellant with the fullest opportunity to gather any new evidence available. He heard all of the evidence and arguments of counsel and weighed the credibility of that evidence. His ruling on the motion for new trial will not be disturbed on appeal.
At the trial, Officer Don Longshore was allowed to testify on redirect examination to the fact that appellant was currently serving time in the penitentiary. This testimony was elicited in response to questioning by defense counsel on cross-examination of this witness regarding an offer of immunity made to appellant by the District Attorney. Appellant moved for a mistrial and, in the alternative, for an instruction to the jury to disregard the testimony. The trial court allowed the evidence to stand.
The circumstances under which this testimony was given are shown by the record:
"CROSS-EXAMINATION BY MR. FRENCH:
 "Q. Were you in there yesterday when they offered him a deal to let him go scot free if he'd testify against Tinker.
"A. Yes, sir, I was.
"Q. What did you hear him say?
"A. He would not.
"Q. I was in there too, wasn't I?
"A. Yes, sir.
* * * * * *
"REDIRECT EXAMINATION BY MR. RAYBURN:
 "Q. Now, Mr. Longshore, Counsel for the Defense has gone into the question of what transpired into offering this accused — What to do for him in return for his testifying, turning State's evidence, so to speak, against Mr. Tinker. Do you recall him asking you about that?
"A. Yes, sir.
 "Q. I believe the words of the Counsel for the Defense is `Offered to let him go *Page 575 
scot free'. Did you hear any kind of offer like that?
"A. No, sir, I did not.
"Q. Tell the jury what the offer was.
"A. That you offered?
"Q. Yes.
 "A. You offered to let his time run concurrent with what time he was serving in the penitentiary now.
"MR. FRENCH: Move for a mistrial.
"THE COURT: Overruled.
"Q. What is that again, sir?
 "A. You let him — Offered to run the time that he got if he would testify against Tinker to run concurrent with what time he was serving in the penitentiary now.
 "MR. FRENCH: I renew my motion for a mistrial. In the alternative, I move that the Court strike it and instruct the jury to disregard it.
 "THE COURT: Overruled. You went into it, opened it up."
On redirect examination, the State may examine a witness as to any matter injected into a case on cross-examination by defense counsel. Defense counsel opened the subject of the nature of the "deal" offered appellant. The District Attorney was then entitled, in the discretion of the trial court, to examine the witness as to the actual terms of the offer. Jonesv. State, 22 Ala. App. 141, 113 So. 478; Chatom v. State, Ala.Cr.App., 360 So.2d 1068.
Further, Linda Nunley had previously stated twice on cross-examination by defense counsel that appellant was serving twenty years. Appellant did not object to this testimony, nor move the Court to instruct the jury to disregard this statement. Appellant also admitted, on cross-examination, that he was serving twenty years in the Federal Penitentiary on a kidnapping charge. An accused cannot complain of the admission of improper evidence when he himself testifies to the same facts. Yelton v. State, 294 Ala. 340, 317 So.2d 331.
Appellant's final contention is that the trial court erred in permitting a witness for the State to testify that he heard the shots at the Elkins trailer at 4:00 a.m. CDT. At trial, appellant objected to this testimony on the grounds that it was improper impeachment of the State's own witnesses and that the time of the shooting had not been raised by defense counsel. The trial court ruled that, since no State witness had testified to the time of the shooting, it was not impeachment; and further, since numerous defense witnesses had testified on this matter, rebuttal testimony was proper.
The order of proof and rebuttal testimony rest largely in the sound discretion of the trial court, and this rule applies to testimony which more properly should have been offered as part of the case in chief. Snow v. State, 50 Ala. App. 381,279 So.2d 552, cert. denied, 291 Ala. 798, 279 So.2d 558.
A careful review of the record reveals no error injuriously affecting the substantial rights of appellant. The judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.