304 So.2d 29

Jerry O. HUTTO

v.

STATE.

8 Div. 564.

Court of Criminal Appeals of Alabama.

Oct. 1, 1974.

Rehearing Denied Oct. 29, 1974.

William J. Baxley, Atty. Gen., and Otis J. Goodwyn, Asst. Atty. Gen., for the State.

Henry W. Blizzard, Jr., Athens, for appellant.

**HARRIS, Judge.**

Hutto was indicted by the Grand Jury of Limestone County for assaulting and beating a peace officer while actively engaged in the discharge of his duties. Title 14, Section 374(19), Code of Alabama 1940, Pocket Part.

The case was transferred to the Limestone County Superior Court as provided by Act No. 1251, General Acts of Alabama, 1969, page 2354, Section 13. Appellant was represented by retained counsel

and at arraignment pleaded not guilty. The jury returned a verdict of guilty as charged and assessed a fine of $500.00. The trial judge sentenced him to imprisonment in the Limestone County jail for six months as additional punishment. Section 9 of said Act provides for appeals to this Court.

On the night of November 6, 1969, a football game was in progress at Clements High School. The visiting team was from Courtland High School in Lawrence County. Clements is outside the city limits of Athens. The principal at Clements had arranged with certain police officers of the City of Athens to work football games and these officers were paid by the school. The officers were in uniform. On the night in question, Allen Davis and Robert Hamilton, both police officers, were working the game.

During half-time, Davis left the stadium to check the parking lots around the school. He heard a noise that sounded like tin cans were being dropped on the pavement and he went to investigate. He walked up to an automobile occupied by five young men drinking beer. The odor of intoxicating beverages was very strong but the men were not drunk or boisterous. On the contrary they were polite and friendly. He observed beer cans around the car. Limestone County is a dry county. The officer told the young men that it was against the law for them to be drinking beer but if they would pick up the cans and go back to the ballgame and not return to the car until after the game, he would not make a case against them. Appellant was one of the five men in the car. They got out of the car and picked up the beer cans and started walking toward the stadium with the officer walking behind them. One or more of the men thanked the officer for being so nice to them and giving them a break. The officer knew these young men were from Lawrence County and had come to see the ballgame. They were out of town visitors and under the circumstances the officer did not want to arrest them and cause them any trouble.

As they were walking back to the stadium, the officer heard a can pop and appellant immediately started running. The officer figured that appellant had taken advantage of his act of friendliness and was trying to slip a can of beer into the stadium. He decided to arrest appellant and charge him with violating the prohibition law. The officer pursued appellant and caught him near the old gym. The officer had on a long coat and underneath he wore a belt to which was attached his pistol holster and a pair of handcuffs. He was holding appellant with one hand and was trying to get his handcuffs with the other one. Appellant began to tussle with the officer and in the struggle, the officer was either knocked or pushed or fell on his back and appellant got on top of him and started beating him in the face with his fists. Appellant beat him so fiercely that the officer's eyes became so swollen he could not see and his lips were cut so badly the lacerations had to be closed with sutures. He felt appellant searching for his pistol but did not know he had gotten his gun until he heard someone say, "Don't shoot him. Don't shoot him." The officer got appellant by the hair and they rolled over but appellant got back on top. The officer raised up to a half-sitting position and appellant struck him twice on the head with the butt end or handle of the pistol. Appellant got off the officer and started running away. Meanwhile a witness to the fight went in the stadium and reported the difficulty.

Police officer Hamilton was standing at the concession stand when he learned about the fight and he rushed to the aid of his fellow officer and a crowd of people followed. Officer Davis could not tell Hamilton the direction his assailant fled but he did tell him that he had taken his pistol. Hamilton spotted appellant running toward a highway and he ran after him with his pistol in his hand. He saw appellant go

down an embankment where there was underbrush and honeysuckle vines. As appellant went over the embankment, Hamilton saw something shiny in his hands. He found appellant hiding in the honeysuckle vines and ordered him to come out. Appellant got up and rushed at Hamilton. Hamilton threw his pistol on the ground behind him as he did not want to shoot appellant. Hamilton struck appellant twice in the stomach to subdue him. He placed appellant under arrest and carried him back to the school and turned him over to a state trooper who transported him to jail. Another officer found Davis' gun in the honeysuckle vines.

A football coach at West Limestone High School was scouting the game and he carried Davis to the Limestone County Hospital. He described Davis' injuries as follows:

"You could barely see one of his eyes. I can't remember which one it was. One of them was completely swollen to. I prised it open and all the white had turned red. Both eyes were bad and he was bleeding in this area somewhere. In the back of his head, I took my handkerchief and kept dobbing it and trying to get it stopped up there. It looked like— of course, his eyes were real swollen and they were swollen to and the back of his head was the area I was most concerned with at that time. It was bleeding. I took—It was about the size of a dime or quarter that you could stick your handkerchief down in it and I done that and wiped it out. You could see the bone of his skull."

Officer Davis was an in-patient at the hospital from November 6, 1969, until mid-day of the following Monday, or a total of three and one-half days. He was under the care and treatment of Dr. J. S. Springer during his hospital stay. He was followed as an out-patient until November 28, 1969, when he was discharged.

According to Dr. Springer the diagnosis was multiple abrasions and lacerations of the hands, arms, and legs. He sustained a stellate laceration of the left occiput area of the scalp, one inch in diameter in three directions—meaning the laceration ran three different ways for about one inch each. It took 8 to 10 sutures to close the scalp laceration.

A lieutenant with the Athens Police Department interviewed appellant in the county jail at 9:50 P. M. on November 6, 1969. Before interrogating him, the officer read him the *Miranda* warnings and rights. Appellant signed a waiver of rights form and gave the officer a statement which was tape-recorded. The pre-*Miranda* predicate was laid before the officer was permitted to relate to the court and jury the statement which appellant gave him. We do not deem it necessary to set out this statement in full. Suffice it to say, the statement "pig tracked" Officer Davis' testimony in substantial detail. Appellant admitted that he was trying to take a can of beer back to the ballgame when Davis arrested him. This statement differs from Davis' testimony only as to the number of times he hit Davis with his fist and struck him with the officer's pistol. He claimed he hit Davis only four times with his fist and struck him only one time with the pistol.

Appellant did not testify in his behalf but offered three witnesses who claimed they saw the difficulty between appellant and Officer Davis. According to their testimony the officer grabbed appellant and said, "Hold on, Buddy. I done told you", and the officer kicked appellant in the groin, and that started the whole thing. They testified that appellant did not hit the officer with his fist and did not strike him with the pistol; that during the struggle the officer slipped and fell striking his head on the cement sidewalk; that appellant did take the officer's pistol but the only thing he did with the gun was try to unload it before he ran away.

Appellant assigned three errors in brief alleging that anyone of the three should

work a reversal in this case. The assigned errors are:

1. The trial court erred in refusing to allow the witness, Ed Bridges, (the scouting coach at the ballgame), to testify as to whether or not the injuries to Allen Davis could have been sustained by' Allen Davis having fell (sic) backwards.

2. The trial court erred in allowing the witness, Police Lieutenant, Roy Brown, to testify as to a statement given to him by appellant when the evidence showed that the appellant had been administered corporal punishment at the hands of police officers and was under the influence of coercion.

3. The trial court erred in refusing appellant's request for the affirmative charge.

The court sustained the state's objection to the question posed to witness Bridges on the ground it called for a conclusion. There was no error in this ruling. A witness may not testify as to the cause of a wound unless it is shown that he is an expert or possesses greater knowledge of the cause of wounds than the average person. Moore v. State, 16 Ala.App. 503, 79 So. 201; Wesley v. State, 32 Ala.App. 383, 26 So.2d 413; Cazalas v. State, 43 Ala. App. 6, 178 So.2d 562.

At any rate two other witnesses, including Dr. Springer were allowed to testify that Officer Davis could have sustained the injuries to his head by falling on the sidewalk.

There was no error in admitting the statement of appellant made to the police officer who interrogated him in the city jail on the night the assault took place. The *Miranda* warnings and rights were fully spelled out to appellant and he signed a waiver of rights form. The trial judge saw and heard the witnesses and he determined the waiver was freely and voluntarily made. The proper predicate was laid before the court determined that the confession was voluntary and before the confession was admitted into evidence. Eagen v. State, 280 Ala. 438, 194 So.2d 842; Emerson v. State, 281 Ala. 29, 198 So.2d 613; Embrey v. State, 283 Ala. 110, 214 So.2d 567.

Appellant strenuously insists that the state failed to prove the material allegations of the indictment and that he was due the affirmative charge. He contends, in brief, as follows:

"In the case at hand, the indictment charged that the Defendant, Jerry Hutto had assaulted a police officer in the line of duty. Officer Davis testified that he was not on duty at the time of the incident complained of, that in fact he was not planning to go on duty until after the ball game was over. Not only did he testify that he was not on duty as a police officer, but he further testified that he was being paid by the high school where the ball game was being held and that he was an employee of the school at that time. The State thus, not only failed to prove a material allegation of the indictment, but by its own witness directly proved that a material allegation of the indictment was false. There being no other count in the indictment present (sic) to the jury, the State having elected not to submit the case on the second count of the indictment, the Court erred in refusing to direct the Jury to return a verdict of not guilty. It is a great miscarriage of justice to charge that a Defendant assaulted a police officer in the line of duty, when that Police Officer testifies himself that he was not on duty, but was an employee of the high school when the incident complained of occurred."

We cannot accord to this insistence of error.

Title 15, Section 152, Code of Alabama 1940, provides:

"An arrest may be made, under a warrant, or without a warrant, by any sher-

iff, or other officer acting as sheriff, or his deputy, or by any constable, acting within their respective counties, or by any marshal, deputy marshal, or policeman of any incorporated city or town, within the limits of the county."

Section 152, supra, has been construed as authorizing a police officer of one town in a county to arrest a law violator in another town within the same county. Reed v. State, 48 Ala.App. 120, 262 So.2d 321.

Over a century ago, the Supreme Court of Alabama held that an arrest may be made by any policeman anywhere within the limits of his county. Williams v. State, 44 Ala. 41.

Title 15, Section 154, Code of Alabama 1940, empowers an officer to "arrest any person, without warrant, on any day and at any time, for any public offense committed, or a breach of the peace threatened in his presence, . . . ".

A policeman is an "officer" within the meaning of Sections 152 and 154, supra.

In construing these two sections, the Supreme Court in Alexander v. State, 274 Ala. 441, 150 So.2d 204, said:

"So it appears from above that a policeman has the duty of not only enforcing municipal ordinances or bylaws, but he has the responsibility of enforcing state criminal laws and is charged with the duty of making arrests for such violations."

Clearly appellant in the possession of beer in a dry county committed a criminal offense in the presence of the arresting policeman and the arrest, or attempted arrest, was lawful.

The case is affirmed.

Affirmed.

All the Judges concur.