Patricia H. Newton appeals from a summary judgment in favor of Ben Armstrong, Jr.; the Town of Columbia ("the town"); and James Green, mayor of Columbia ("the mayor"), on her claims of assault, intentional infliction of emotional distress, and violation of her civil rights under color of state law (see 42 U.S.C. § 1983). We affirm in part, reverse in part, and remand. *Page 1215 
Ms. Newton's complaint claimed that Paxton Oakley, who she alleged was her sister's husband, and Armstrong, a police officer employed by the town, had assaulted, kicked, and threatened her, thereby committing the three torts she alleged. Ms. Newton also claimed that Armstrong had alleged that he was acting under the orders of the mayor. Ms. Newton sought compensatory and punitive damages from Oakley, Armstrong, the town, and the mayor. Armstrong, the town, and the mayor answered, denying Ms. Newton's claims.
Armstrong, the town, and the mayor jointly moved for a summary judgment, supporting their motion with Armstrong's affidavit, the pleadings, and a brief. Ms. Newton filed a response, supported by her own affidavit. On November 15, 1996, the trial court entered a partial summary judgment in favor of Armstrong, the town, and the mayor on all counts. The trial court made that judgment final, pursuant to Rule 54(b), Ala.R.Civ.P. Ms. Newton's claims against Oakley remain pending in the trial court.
Ms. Newton appealed to the Alabama Supreme Court; that court transferred the appeal to this court pursuant to § 12-2-7(6), Ala. Code 1975.
Rule 56, Ala.R.Civ.P., sets forth a two-tiered standard for determining whether to enter a summary judgment. In order to enter a summary judgment, the trial court must determine: 1) that there is no genuine issue of material fact, and 2) that the moving party is entitled to a judgment as a matter of law. In determining whether a summary judgment was properly entered, the reviewing court must view the evidence in a light most favorable to the nonmovant. Long v. Jefferson County,623 So.2d 1130, 1132 (Ala. 1993). We note that Rule 56 is to be read in conjunction with the "substantial evidence rule" (§ 12-21-12, Ala. Code 1975). Hurst v. Alabama Power Co., 675 So.2d 397, 398
(Ala. 1996). In order to defeat a defendant's properly supported motion for summary judgment, the plaintiff must present "substantial evidence," i.e., "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." Id. (quoting West v. Founders Life AssuranceCo., 547 So.2d 870, 871 (Ala. 1989)). That said, however, we further note that "an appellate court will not presume error and will affirm the judgment appealed from if [it is] supported on any valid legal grounds." Walnut Equip. Leasing Co. v.Graham, 532 So.2d 655, 655 (Ala.Civ.App. 1988) (citing Tuckerv. Nichols, 431 So.2d 1263 (Ala. 1983)).
The evidence of record, viewed most favorably to Ms. Newton, is as follows. On February 26, 1993, Armstrong received a dispatch radio call to meet with Sheila Oakley at her residence. Ms. Oakley, who is Ms. Newton's sister, requested that Armstrong accompany her to the house of another sister, Sarah Botts; Ms. Oakley stated that it was "her turn to have custody of her mother" and that an attorney had advised her to contact a police officer to be a witness to the exchange of custody. Paxton Oakley and Sheila Oakley then proceeded to the Botts residence, and Armstrong followed in his police car.
When the Oakleys and Armstrong arrived at the Botts residence, Ms. Newton, Ms. Botts, and their sister Mary Kirkland went onto the front porch and asked Armstrong what he was doing on the property. Armstrong replied that he was there to assist Ms. Oakley in picking up her mother, and that he "was not going anywhere" because "that is what Mayor James Green had told him to do." Armstrong also stated that he was not on duty, but that "when you work for the city [i.e., the town] you do what they tell you to do." Ms. Botts told Armstrong to leave because she was afraid that his presence would upset her mother; she also claimed that Armstrong "had no business or jurisdiction" to be present. Ms. Newton asked Ms. Oakley why she had needed to bring a police officer, and Ms. Oakley replied that although she did not want any trouble, she wanted to pick up her mother, and that she knew that if she had come by herself, Ms. Newton and her sisters would cause trouble.
Mr. Oakley then attempted to force open the door of the Botts residence, but was told that because Ms. Newton's mother feared police officers, the Oakleys could not get her until the police officer left. Ms. Newton's *Page 1216 
mother then emerged from the house briefly and began trembling, asking whether Armstrong was there to arrest her. Ms. Kirkland ushered Ms. Newton's mother back into the residence, and Ms. Newton told Ms. Oakley and Armstrong that her mother was not coming out of the house until Armstrong removed himself and his car. Meanwhile, Mr. Oakley and another man, LaDon Hasty, went from the porch to Mr. Oakley's car. Ms. Oakley requested that Armstrong contact the Henry County Sheriff's Department, and Armstrong moved his patrol car away from the Botts residence and attempted to contact the Henry County Sheriff's Department.
Mr. Oakley and Mr. Hasty began to argue, and then to fight, prompting Ms. Newton to run between them and grab Mr. Hasty's shirt. After Ms. Newton told Mr. Oakley to leave, Ms. Oakley hit Ms. Newton in the face, and the two women began fighting. As Mr. and Ms. Oakley fought with Ms. Newton, Armstrong intervened, grabbing Ms. Newton by her left arm. Ms. Newton, now on the ground but continuing to hold on to Ms. Oakley, asked Armstrong to "get Paxton and Sheila off of me." Armstrong, holding a "blackjack," told Ms. Newton that unless she let go of Ms. Oakley he would strike her with it. Armstrong also placed his boot on Ms. Newton's shoulder and twisted it, causing severe pain, and Ms. Newton pleaded with him to turn her loose. Armstrong told her to calm down and helped her from the ground. Armstrong threatened to arrest Ms. Newton, but did not because Henry County sheriff's deputies arrived and took charge of the matter. Ms. Newton was subsequently treated for her injuries at a local medical clinic.
Finally, for purposes of this appeal, we take judicial notice that the town has a population of 922 people according to the 1990 federal census and that it is located within Houston County. Pickens County v. Jordan, 239 Ala. 589, 590,196 So. 121, 122 (1940).
In her brief on appeal, Ms. Newton raises several issues that she believes may have influenced the trial court to grant the defendants' motion for summary judgment. She claims that (1) the trial court erred in concluding that Armstrong and the mayor were immune from liability; (2) the trial court erred in finding Armstrong and the mayor immune under the provisions of § 11-47-190, Ala. Code 1975[1]; and (3) the trial court erred in holding that § 6-5-338, Ala. Code 1975, retrospectively applied to render Armstrong and the mayor immune.
We note that none of these issues challenges the propriety of the summary judgment in favor of the town, and that the only reference to the town's liability in Ms. Newton's argument is the unsupported statement that "[w]hile the Town . . . might have immunity from the assault count pursuant to Section11-47-190 . . . the Appellant contends that the town . . . would enjoy no such immunity for violation of her constitutional rights and violation of 42 [U.S.C. §] 1983." "This court will address on appeal only those issues presented and for which supporting authorities have been cited to this court." Birmingham Coal Coke Co. v. American Resources Ins.Co., 627 So.2d 421, 422 (Ala.Civ.App. 1993). By failing to raise any error and to provide supporting authorities with respect to the judgment in favor of the town, Ms. Newton has waived any error therein, and we address only the propriety of the summary judgment in favor of Armstrong and the mayor.
We now consider the liability of Armstrong and the mayor. Although in the trial court both Armstrong and the mayor asserted the defense of qualified immunity, the particular facts of this case prevent the applicability of this defense. With respect to immunity from liability on Ms. Newton's state law claims, we note that our supreme court has stated that "[c]ity officials acting within the general scope of their authority have a qualified or discretionary immunity and are not subject to tort liability for an administrative act or omission." Ex parte City of Birmingham, 624 So.2d 1018, 1021
(Ala. 1993). Similarly, with respect to immunity *Page 1217 
from suit and from liability under 42 U.S.C. § 1983, "[t]he first step of the analysis is to determine whether the officials were acting within their discretionary authority."Dolihite v. Maughon, 74 F.3d 1027, 1040 n. 21 (11th Cir.),cert. denied, ___ U.S. ___, 117 S.Ct. 185, 136 L.Ed.2d 123
(1996).
However, we cannot conclude as a matter of law that Armstrong and the mayor acted within their authority. As we have stated, the town is located in Houston County, and the town's law enforcement authority is thus limited to territory lying either within Houston County (see Ala. Code 1975, § 15-10-1) or outside Houston County but within a zone extending one and one-half miles from the town limits (see Ala. Code 1975, § 11-40-10;White v. City of Decatur, 225 Ala. 646, 648, 144 So. 873, 874
(1932)). While Armstrong's affidavit states that the incident occurred within the town's police jurisdiction, Ms. Newton's affidavit denies this and further states that a sign indicating the town's police jurisdiction was moved some days after the incident so as to include the Botts residence. Additionally, she states that Henry County sheriff's deputies were called for and took charge of the scene. There is no proof, other than these affidavits, as to whether the Botts residence was within or outside the town's police jurisdiction. Viewing this conflict in the evidence in a light most favorable to Ms. Newton, as we must, we cannot agree with Armstrong and the mayor that they negated any doubt that they acted within their authority so that immunity might attach as a matter of law.[2]
In addition, we note that the evidence is in conflict as to Armstrong's conduct on the day of the incident. Ms. Newton's affidavit indicates that while Ms. Newton was on the ground, Armstrong grabbed Ms. Newton's left arm, placed his boot on Ms. Newton's shoulder and twisted it, and threatened to strike Ms. Newton with a "blackjack." Our supreme court has stated that "[a]n assault consists of an intentional, unlawful offer to touch the person of another in a rude or angry manner under such circumstances as to create in the mind of the party alleging the assault a well-founded fear of an imminent battery, coupled with the apparent present ability to effectuate the attempt, if not prevented." Wright v. Wright,654 So.2d 542, 544 (Ala. 1995) (internal quotation marks omitted). Although Armstrong denies having acted in this manner, Ms. Newton's affidavit provides substantial evidence that an assault occurred.
Moreover, if the location of the incident made the basis of Ms. Newton's complaint was indeed outside the police jurisdiction of the town, as she has affirmed in her affidavit, Armstrong may not assert any privilege that might otherwise inure to him in his role as a police officer. "[A]n officer may not claim justification for an assault where he exceeds the authority given him in the particular case." 6A C.J.S.Assault Battery § 27. Of course, the mere possibility that Armstrong may have left the jurisdiction of the town that employed him would not have abrogated his privilege as a private citizen to terminate or prevent the renewal of an affray or a breach of the peace, and in so doing to use such force as was reasonably necessary to accomplish this purpose.See Rogers v. Huber, 239 So.2d 333, 335 (Miss. 1970);Restatement (Second) of Torts § 141 (1965). However, the scant record before us does not allow us to consider whether Armstrong's conduct did or did not constitute an assault and battery, or whether he was privileged as a matter of common law to use force upon Ms. Newton under the circumstances. These questions must be resolved by the trier of fact. Because Ms. Newton presented substantial evidence that Armstrong assaulted her, and that he acted outside his authority as a police officer, we must reverse the summary judgment on this claim.
In addition, we conclude that a jury could find that Armstrong's conduct identified *Page 1218 
in Ms. Newton's affidavit constituted a deprivation under color of state law of her Fourth Amendment right to be free from an "unreasonable seizure" so as to be actionable under 42 U.S.C. § 1983. As was stated in Ross v. Neff, 905 F.2d 1349, 1353-54
(10th Cir. 1990), "an arrest made outside of the arresting officer's jurisdiction violates the Fourth Amendment to the Constitution and is therefore actionable pursuant to 42 U.S.C. § 1983
under the appropriate circumstances," and "[a] warrantless arrest executed outside of the arresting officer's jurisdiction is analogous to a warrantless arrest without probable cause." Moreover, that Armstrong did not formally place Ms. Newton under arrest does not defeat the applicability of the Fourth Amendment: "A 'seizure' triggering the Fourth Amendment's protections occurs only when government actors have, by means of physical force or authority, in some way restrained the liberty of a person." Graham v. Connor,490 U.S. 386, 395 n. 10, 109 S.Ct. 1865, 1871 n. 10, 104 L.Ed.2d 443
(1989) (internal quotation marks omitted). The question of the reasonableness of Armstrong's conduct has not been fully briefed by the parties, because of the defendants' sole reliance upon immunity in their motion for summary judgment, and we therefore pretermit further consideration of this issue.
However, while the conduct alleged in Ms. Newton's affidavit may amount to an assault, or to a violation of her constitutional rights, it does not follow that the same conduct necessarily constitutes extreme and outrageous conduct sufficient to support an action for intentional infliction of emotional distress. See Surrency v. Harbison, 489 So.2d 1097,1104-06 (Ala. 1986) (holding that an assault claim was for a jury to decide, while affirming the direction of a verdict on an outrage claim). Our supreme court has often emphasized that "to present a jury question [on an outrage claim] the plaintiff must present sufficient evidence that the defendant's conduct (1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it." E.g., Thomasv. BSE Indus. Contrs., 624 So.2d 1041, 1042 (Ala. 1993). Moreover, the conduct made the basis of the claim must have been "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." Id.
at 1043-44 (quoting American Road Service Co. v. Inmon,394 So.2d 361, 365 (Ala. 1981)).
Viewing the evidence in a light most favorable to Ms. Newton, we conclude that the trial court properly entered the summary judgment in favor of Armstrong on this claim. While Armstrong's conduct, as alleged in Ms. Newton's affidavit, may have been such as to cause Ms. Newton emotional distress, and may have taken place outside of the town's police jurisdiction, it does not meet the stringent standard of outrageous and extreme conduct adopted by our supreme court. We therefore affirm the summary judgment as to this claim.
With respect to Ms. Newton's claims against the mayor, we note that Ms. Newton's affidavit does not refer to any conduct of the mayor except to state that on two occasions while Armstrong was at the Botts residence, he stated that the mayor had sent him. Even assuming the mayor did in fact send Armstrong, which Armstrong denies, we fail to perceive how the mere dispatch of a police officer to assist in the transfer of Ms. Newton and Ms. Botts's mother to Ms. Oakley would constitute an assault, an intentional infliction of emotional distress, or a violation of Ms. Newton's constitutional rights. Moreover, the mayor, as a matter of both state and federal law, is not subject to liability under the doctrine ofrespondeat superior based upon Armstrong's actions. The United States Supreme Court has stated in no uncertain terms that "§ 1983 liability is not available under the doctrine ofrespondeat superior." West v. Atkins, 487 U.S. 42, 54 n. 12,108 S.Ct. 2250, 2258 n. 12, 101 L.Ed.2d 40 (1988). Similarly, our supreme court has held that a municipality's chief executive is not vicariously liable for the misconduct of his or her subordinates. See Carter v. City of Gadsden, 264 Ala. 544,550, 88 So.2d 689, 695 (1955) (mayor not liable for tortious acts of city electrical inspector). Thus, even if the *Page 1219 
trial court entered the summary judgment in favor of the mayor on the ground of qualified immunity, which we have concluded is not applicable in this instance, its error is harmless and not reversible, because the judgment is correct for other reasons.See Rule 45, Ala.R.App.P.
For the foregoing reasons, we reverse the summary judgment as to the assault claim against Armstrong and as to the 42 U.S.C. § 1983
claim against Armstrong, and we remand the cause for further proceedings. In all other respects, the summary judgment is affirmed.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
YATES, MONROE, and THOMPSON, JJ., concur.
CRAWLEY, J., concurs in the result.
[1] In their brief on appeal, Armstrong, the town, and the mayor have disclaimed any reliance upon this Code section as a ground for the summary judgment, and we therefore do not address its application.
[2] We note that even if we were to assume that Ala. Code 1975, §6-5-338, applies to incidents occurring before its adoption (but see Crouch v. Whatley, 900 F. Supp. 1567, 1571-72
(M.D.Ala. 1995)), its reference to "conduct in performance of any discretionary function within the line and scope of [an officer's] law enforcement duties" necessarily excludes its application here. If the Botts residence was outside the town's police jurisdiction, and outside Houston County, then Armstrong and the mayor had no discretion to exercise police authority there.