Celester Cedric Edwards was convicted in the Fairhope Municipal Court of driving under the influence of alcohol ("DUI"), a violation of Fairhope municipal ordinance no. 997, which adopted § 32-5A-191, Ala. Code 1975, and of resisting arrest, a violation of Fairhope municipal ordinance no. 644, which adopted § 13A-10-41, Ala. Code 1975. He appealed for a trial de novo in the circuit court, where, after a jury trial, he was again convicted of DUI and resisting arrest. He was sentenced to six months in the city jail for each conviction; the sentences were split, and he was ordered to serve 60 days in jail followed by 2 years' probation for the DUI conviction, and 30 days in jail followed by 2 years' probation for the resisting-arrest conviction, the sentences to run consecutively.
Our review of the record reveals the following. Shane Leiser, an officer with the Fairhope Police Department, testified that in the early morning hours of April 24, 2004, he observed a motor vehicle traveling at a high rate of speed northbound on Highway 98 in Fairhope in front of the Big Lots discount store; that he clocked the speed of the vehicle at 64 miles per hour; and that the speed limit in that area was 45 miles per hour. Officer Leiser stated that after the motor vehicle passed his location, he pulled onto Highway 98 and began an immediate pursuit of the motor vehicle. Officer Leiser also testified that "[t]he more [he] tried to catch up to [the vehicle], the further [the] vehicle was pulling away from [him]" (R.Supp. 6); that "[t]he vehicle slowed down and turned off [Highway 98] onto Dale Road which allowed [Officer Leiser] to close the distance and catch up to the vehicle" (R.Supp. 7); that he activated his blue lights after he turned onto Dale Road; that he did not activate his blue lights until he turned onto Dale Road because he "wanted to close [the] distance to catch up to [the vehicle] before [he] activated [his] lights" (R.Supp. 8); and that he waited to activate his lights because, he said, he was afraid that the driver "would pick up a higher rate of speed and continue north to where it would become reckless." (R.Supp. 7-8.) Officer Leiser stated that after he turned onto Dale Road and activated his blue lights, the vehicle pulled over after "[approximately 300 yards, 350 [yards]" (R.Supp. 8), but that it pulled over in the City of Daphne's jurisdiction — "Dale Road goes down, makes a hard curve to the left [and that] when [you] make that curve that exits [the City of Fairhope's] jurisdiction into the City of Daphne's jurisdiction." (R.Supp. 8.)
Officer Leiser stated that after the vehicle pulled over, he approached the vehicle, told the driver, Edwards, the reason he had stopped him — that he had observed him speeding in Fairhope city limits — and he asked for his driver's license. He testified that Edwards looked around for his driver's license but was unable to locate it and that during this time, he "could smell a strong odor of some kind of alcoholic beverage coming from [Edwards] and his vehicle." (R.Supp. 10.) When Officer Leiser then asked Edwards for his full name and his date of birth, Edwards "took four different tries to try to get the correct date of birth before he could give [Officer Leiser] a date of birth." (R.Supp. 10.) Officer Leiser testified that "[h]e'd start giving [Officer Leiser] some numbers and back up, try another number [a]nd then finally the fourth time [Edwards] gave [Officer Leiser] a full date of birth." (R.Supp. 11.)
Officer Leiser stated that after this exchange, he suspected that Edwards was driving under the influence of alcohol, and he asked him to get out of his vehicle and perform some field-sobriety tests — the *Page 482 
one-legged-stand test and the walk-and-turn or heel-to-toe test. He testified that Edwards left his heel on the ground during the one-legged-stand test and that although he attempted to perform the walk-and-turn test, he did not perform it correctly. Officer Leiser stated that it was his opinion Edwards was under the influence of alcohol to such a degree that he could not safely operate a motor vehicle, and he placed Edwards under arrest for DUI.
Officer Leiser stated that he "asked [Edwards] to place his hands behind his back [and Officer Leiser] grabbed one [of Edwards's] arm[s] and pulled out [his] cuffs and said `you're under arrest for driving under the influence.' At that time, [Edwards] broke and tried to fight, to resist, to get away from us." (R.Supp. 20.) Thereafter, a struggle ensued between Edwards, Officer Leiser, and Brett Murphy, a police officer with the City of Fairhope who had arrived at the scene as backup for Officer Leiser. Officer Leiser testified that it took approximately five minutes to subdue Edwards and place him in handcuffs and that by that time two other police officers from Fairhope, Officer Eric Johnson and Sgt. Jimmy Davis, had arrived on the scene, and they transported Edwards to the police station. Officer Leiser stated that he waited at the scene for a tow truck to come and remove Edwards's vehicle and that by the time he arrived at the police station — 15 or 20 minutes later — Edwards was asleep in his cell.
Officer Murphy testified that when he responded to the scene on April 24, 2004, Edwards was already out of his vehicle and that after observing Edwards take the two field-sobriety tests, he was of the opinion that Edwards was under the influence of alcohol to such a degree that he could not safely operate a motor vehicle. He also testified that when Officer Leiser attempted to place Edwards under arrest, Edwards spun to the left and ran, and a struggle ensued between Edwards and the two police officers. Officer Murphy stated that they were finally able to subdue Edwards and handcuff him and that either Officer Johnson or Sgt. Davis transported Edwards to the police station. Officer Murphy testified that during the struggle he injured his elbow and sought medical attention at the hospital following the incident and that his glasses were destroyed during the struggle.
 I.
Edwards contends that the trial court erred when it denied his motion for a judgment of acquittal on the DUI charge. Specifically, Edwards contends:
 "In order to support a conviction pursuant to [§] 32-5A-191(a)(2) [, Ala. Code 1975,] the proof must establish that Edwards `consumed such an amount of alcohol as to affect his ability to operate a vehicle in a safe manner.' Rice v. State, 611 So.2d 1161 (Ala.Crim.App. 1992), Frazier v. City of Montgomery, 565 So.2d 1255, 1257
(Ala.Crim.App. 1990).
 "The evidence presented at trial established that Edwards was driving an automobile in April of 2004. . . .
 ". . . .
 "The City never established by witness testimony, Edwards's own statements, or circumstantial evidence . . . the required standard for alcohol consumption. At best, the City established that Edwards consumed alcohol before his vehicle was stopped. This consumption could have occurred at any time. Therefore, the driving under the influence [conviction] should be reversed."
(Edwards's brief at pp. 15-17.) Thus, Edwards concedes that the City of Fairhope ("the City") established that he was driving *Page 483 
a motor vehicle and that he had consumed alcohol before his motor vehicle was stopped. Both Officer Leiser and Officer Murphy testified that they watched Edwards attempt the two field-sobriety tests and that it was each officer's opinion that Edwards was under the influence of alcohol to such a degree that he could not safely operate a motor vehicle.
"`In determining the sufficiency of the evidence to sustain a conviction, a reviewing court must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution.'" Ballenger v. State,720 So.2d 1033, 1034 (Ala.Crim.App. 1998), quotingFaircloth v. State, 471 So.2d 485, 488 (Ala.Crim.App. 1984), aff'd, 471 So.2d 493 (Ala. 1985). "`The test used in determining the sufficiency of evidence to sustain a conviction is whether, viewing the evidence in the light most favorable to the prosecution, a rational finder of fact could have found the defendant guilty beyond a reasonable doubt.'" Nunn v.State, 697 So.2d 497, 498 (Ala.Crim.App. 1997), quotingO'Neal v. State, 602 So.2d 462, 464
(Ala.Crim.App. 1992). "`When there is legal evidence from which the jury could, by fair inference, find the defendant guilty, the trial court should submit [the case] to the jury, and, in such a case, this court will not disturb the trial court's decision.'" Farrior v. State, 728 So.2d 691, 696
(Ala.Crim.App. 1998), quoting Ward v. State,557 So.2d 848, 850 (Ala.Crim.App. 1990). "The role of appellate courts is not to say what the facts are. Our role . . . is to judge whether the evidence is legally sufficient to allow submission of an issue for decision [by] the jury." Ex parteBankston, 358 So.2d 1040, 1042 (Ala. 1978).
In the present case, the evidence presented indicated that Edwards was operating a motor vehicle, that he had consumed alcoholic beverages, and that, in the opinion of the two police officers who had observed the field-sobriety tests, Edwards was under the influence of alcohol to such a degree that he could not safely operate a motor vehicle. There was sufficient evidence to justify the submission of the DUI charge to the jury; thus, the trial court did not err when it denied Edwards's motion for a judgment of acquittal on the DUI charge.
 II.
Edwards also contends that the City did not have the authority to prosecute him for resisting arrest because, he says, "[n]o actions on the part of Mr. Edwards that could rise to the level of resisting arrest took place within the jurisdiction of the City of Fairhope; therefore, the City of Fairhope had no jurisdiction to prosecute Mr. Edwards for resisting arrest and Mr. Edwards's conviction for resisting arrest should be overturned." (Edwards's brief at p. 13.) Edwards raised this issue in his motion for a judgment of acquittal.
Officer Leiser observed Edwards speeding in Fairhope and even though Officer Leiser immediately began pursuing Edwards's vehicle, Edwards was traveling at such a high rate of speed that he had already left the City of Fairhope's jurisdiction and entered the City of Daphne's jurisdiction before Officer Leiser was able to make the traffic stop. After he stopped Edwards's vehicle, Officer Leiser arrested him for DUI based upon Officer Leiser's determination that Edwards was operating his vehicle while under the influence of alcohol and that Edwards was under the influence of alcohol to such a degree that he could not safely operate his motor vehicle. *Page 484 
In Rollins v. City of Birmingham, 344 So.2d 200
(Ala.Crim.App. 1977), this Court stated:
 "Officer Hunt, in whose presence the alleged misdemeanor was committed, had the legal right to arrest defendant anywhere in Jefferson County. In making a valid arrest a police officer is not limited to the territory within the corporate limits of the municipality of which he is a police officer; he may legally arrest in any part of the county in which the municipality is situated, Code of Alabama 1940, Tit. 15, Sec. 152; Williams v. State, 44 Ala. 41 [(1870)]; Hutto v. State, 53 Ala.App. 685, 304 So.2d 29 [(1974)]; Reed v. State, 48 Ala.App. 120, 262 So.2d 321 [(1972)]."
344 So.2d at 202-03 (emphasis added). Thus, Officer Leiser had the authority to arrest Edwards for DUI even though the arrest occurred in Daphne, rather than in Fairhope, because a police officer has the authority to make an arrest in another city in the same county. See Rollins, 344 So.2d at 202-03, and § 15-10-1, Ala. Code 1975. As the State correctly argues in its brief:
 "Officer Leiser saw Edwards speeding through the City of Fairhope. The pursuit took about five minutes. Edwards was obviously speeding in the City of Fairhope. If Edwards was DUI at the time he was stopped just within the Daphne police jurisdiction he was DUI while he was speeding through Fair-hope."
(State's brief at p. 15.)
However, although Officer Leiser had the authority to arrest Edwards for DUI even though the arrest occurred in Daphne, rather than in Fairhope, the municipal court of Fairhope had no jurisdiction over the resisting-arrest charge. Article VI, § 145, Ala. Const. 1901, states that "[a]ll municipal courts shall have uniform original jurisdiction limited to cases arising under municipal ordinances as prescribed by law." Section 12-14-1(b), Ala. Code 1975, provides that "[t]he municipal court shall have jurisdiction of all prosecutions for the breach of the ordinances of the municipality within itspolice jurisdiction" (Emphasis added.) The undisputed evidence in this case indicates that the actions upon which the City of Fairhope based its charge of resisting arrest occurred solely in Daphne, after Edwards had been stopped and as he was being placed under arrest. If there is an absence of jurisdiction over either the person or the subject matter, a court has no power to act, and jurisdiction over the subject matter cannot be waived or created by consent. See Ex parteV.S., 918 So.2d 908 (Ala. 2005). Edwards's conviction for resisting arrest was void because the municipal court of Fairhope lacked subject-matter jurisdiction. See Payne v.State, 915 So.2d 1179 (Ala.Crim.App. 2005). Consequently, the circuit court had no jurisdiction to entertain Edwards's appeal for a trial de novo.[1] See, e.g., Ex parte Hood,404 So.2d 717 (Ala. 1981), and Jackson v. City ofHuntsville, 513 So.2d 99 (Ala.Crim.App. 1987) (each recognizing that dismissal of the proceedings in the circuit court is required when it affirmatively appears that the judgment of the lower court was void for lack of jurisdiction). We note, however, that because there has been no valid conviction for resisting arrest, the City of Daphne may still prosecute Edwards in the municipal court of the City of Daphne for resisting arrest. *Page 485 
For the foregoing reasons, we affirm Edwards's conviction and sentence for DUI; however, because a void judgment will not support an appeal, we dismiss this appeal as it relates to Edwards's conviction for resisting arrest, and instruct the circuit court to vacate that conviction and sentence.
AFFIRMED IN PART; APPEAL DISMISSED IN PART.
McMILLAN, P.J., and COBB, BASCHAB, and WISE, JJ., concur.
[1] Because the resisting-arrest conviction is void for lack of jurisdiction, we pretermit any discussion of Edwards's contention that he was entitled to have the jury charged that "a person can lawfully resist an unlawful arrest." (R.Supp. 73.)