[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-11492
Non-Argument Calendar

_____

D.C. Docket No. 1:16-cv-00879-WKW-SRW

RUTH L. ROBINSON,

Plaintiff-Appellee,

versus

SHANE ASH, Dothan Police Officer,
in both his individual and official capacity

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(February 11, 2020)

Before ROSENBAUM, GRANT, and MARCUS, Circuit Judges.

PER CURIAM:

Shane Ash is a police officer for the City of Dothan, located in Houston

County, Alabama.  In 2016, he investigated attorney Ruth Robinson for the crime

of intimidating a witness—even though the alleged criminal events did not occur in Dothan.  Robinson later sued Ash for violations of federal and state law.  In response, Ash sought summary judgment based on qualified immunity under federal law and discretionary-function immunity under state law.  The district court denied the motion, holding that because Ash lacked authority to investigate Robinson, his actions were not shielded from suit.  We agree, and affirm the denial of summary judgment.

## I.

## A.

The facts of this case begin with Robinson's work as an attorney in a different case.  In 2016, Robinson represented James Bailey in post-criminal conviction proceedings in Henry County.  Robinson's theory of relief was partly based on documents indicating that Bailey was framed by an investigator named Allen Hendrickson.

While digging for related police corruption in neighboring Houston County, Robinson came to believe that one of the county residents, Danielle Cox, might have valuable information.  Cox seemed to know some of the local law enforcement officers, and it turns out that she had also been a confidential informant in Bailey's case—a fact that Robinson did not know when she reached out to Cox.

When Robinson spoke with Cox over the phone, Cox offered nothing that would support Bailey's case. According to Robinson, Cox said she needed time to collect her thoughts and would call back that evening. Yet Cox did not call back, so Robinson texted her several times. The next night, after texting had also proved ineffective, Robinson showed up uninvited at Cox's house. Cox did not wish to speak with Robinson, so she had her boyfriend answer the door and say that she was not home. Unable to speak with her, Robinson left.

As it happens, Cox and Hendrickson—the investigator who, according to Robinson's documents, had planted evidence in Bailey's case—were friends. The day after Robinson and Cox first spoke on the phone, Cox contacted Hendrickson to complain about Robinson.

For reasons that are not clear, Hendrickson passed on those complaints to Ash, an investigator for the Dothan Police Department and the defendant here. Neither Cox nor Robinson lived in Dothan, although both Dothan and Cox's home are in Houston County. No evidence suggests that any of the interactions between Robinson and Cox occurred in Dothan.

Still, after his call with Hendrickson, Ash took it upon himself to investigate what had happened, so he called Cox to get more information. Cox told him about her role in Bailey's case and asserted that Robinson wanted her to testify about corrupt dealings of law enforcement. Cox also explained that she viewed

3

Robinson's request as an attempt to solicit perjury. Cox called Ash the next day to report that Robinson had visited her home. Ash asked if Cox wanted to press charges, and she said yes.

Rather than contacting the Houston County Sheriff's Office to report the events, Ash opted to continue his investigation alone. He prepared an application and affidavit for a warrant to search Robinson's cell phone for evidence that she had threatened a witness. The warrant was granted and was to be executed in Henry County (where Robinson would be for a hearing in Bailey's case). At that point, Ash enlisted deputies from the Henry County Sheriff's Office to help him execute the warrant. Later that day, as Robinson was leaving the Henry County courthouse, she was stopped by the deputies and was told to wait for Ash. He arrived more than an hour later, handed the warrant to Robinson, and took her phone.

## B.

Robinson sued Ash for violations of federal and state law. Robinson alleged that Ash orchestrated an unlawful search and seizure of her phone to retaliate against her for investigating Hendrickson, and then used an invalid search warrant to rummage through her cell phone. She said that Ash's actions violated both the First and Fourth Amendments and made him liable under 42 U.S.C. § 1983. She

4

also claimed that under Alabama law, Ash was liable for false imprisonment, conversion, and invasion of her privacy.[1]

Ash moved for summary judgment, arguing that qualified immunity protected him from suit on the federal law claims and contending that discretionary-function immunity shielded him from suit on the state law claims. The district court denied both kinds of immunity for the same reason: it found that Ash had no authority to go beyond his city's police jurisdiction by investigating Robinson and by orchestrating the search of her phone. Ash now appeals.

## II.

We have jurisdiction to consider the issues of qualified immunity and state law immunity raised in this interlocutory appeal. *Hunter v. City of Leeds*, 941 F.3d 1265, 1271 n.2 (11th Cir. 2019). We review de novo the denial of summary judgment based on immunity, construing all facts and drawing all inferences in favor of the non-moving party. *See Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002) (qualified immunity).

---

[1] Robinson further alleged that Ash had taken her phone in violation of the Fifth Amendment's Takings Clause. On appeal, she expressly waives this argument. Moreover, she sued Ash in both his individual and official capacity. The district court granted summary judgment on the official capacity claims; those claims are not before us.

III.

A.

The main issue before us is whether Ash is entitled to qualified immunity. Precedent cloaks "government officials performing discretionary functions with a qualified immunity, shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). "In order to receive qualified immunity, an official must first establish that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *McCullough v. Antolini*, 559 F.3d 1201, 1205 (11th Cir. 2009) (citation and quotation marks omitted). Only then would the burden shift to the plaintiff to demonstrate that the officer violated federal law that was "clearly established at the time of the incident." *Id.* But Ash has failed to carry his threshold burden.

To prove that his actions come within the scope of his discretionary authority, Ash can show "objective circumstances which would compel the conclusion that his actions were (1) undertaken pursuant to the performance of his duties and (2) within the scope of his authority." *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988) (citation omitted). Robinson concedes the first prong by acknowledging that Ash can generally undertake investigations and searches to

6

carry out his job-related duties.  Still, Ash must establish that his investigation and search fit "within the scope of his authority."

We look to state law to determine the scope of an officer's authority.  *Estate of Cummings v. Davenport*, 906 F.3d 934, 940 (11th Cir. 2018).  In Alabama, a law enforcement officer's authority hinges on the jurisdiction of the entity he serves: if a city officer takes enforcement action "outside the police jurisdiction of the town," he "may not assert any privilege that might otherwise inure to him in his role as a police officer."  *See Moore v. Crocker*, 852 So. 2d 89, 91 (Ala. 2002) (quoting *Newton v. Town of Columbia*, 695 So. 2d 1213, 1217 (Ala. Civ. App. 1997)).  An officer operating beyond his geographically limited jurisdiction has "exceeded his authority."  *Id*. at 92.

As the district pointed out, city police officers like Ash "do not have free-floating jurisdiction in Alabama."  *Robinson v. Ash*, 374 F. Supp. 3d 1171, 1179 (M.D. Ala. 2019).  Generally, a city's police jurisdiction extends to the city's corporate limits or—at most—three miles beyond the city limits.  Ala. Code § 11-40-10(a)(1).  That said, state law provides three relevant exceptions to this rule. *First*, a city officer may arrest a person anywhere in same county as the city in which he serves.  *Id.* § 15-10-1.  *Second*, if acting as a "private person," an officer can make a citizen's arrest, regardless of jurisdiction.  *Id.* § 15-10-7.  And *third*, a municipal officer may execute a search warrant outside of his ordinary

7

jurisdiction—but only if accompanied by a deputy sheriff from the county. *See id.* §§ 15-5-1, 15-5-5, 15-5-7; *Gratton v. State*, 456 So. 2d 865, 871 (Ala. Crim. App. 1984) ("Since the police officers were accompanied by a deputy sheriff, the search warrant was properly executed.").

Under this framework, Ash has not shown that he had state law authority to investigate Robinson and arrange for the search and seizure of her phone—the core conduct challenged here. Ash does not contend that his conduct comes within Dothan's ordinary police jurisdiction, nor would that argument have merit given that none of the alleged criminal activity happened within three miles of the city limits. And Ash does not argue that his actions are authorized by the exception for citizen's arrest.

Nor do his investigation efforts fit within the jurisdictional exception for executing a warrant. To be sure, the seizure of Robinson's phone was likely authorized by the warrant exception because Ash executed the seizure with the Henry County Sheriff's Office. *See Gratton*, 456 So. 2d at 871. But that limited authorization cannot cure the defect here: Robison constitutionally challenges Ash's conduct in orchestrating the search by investigating her and pursuing a warrant, as well as his post-seizure involvement in searching her phone—none of this broader activity could be authorized by the warrant exception.

Ash seeks refuge under his authority to make arrests anywhere in Houston County. Ala. Code § 15-10-1. By extension of this arrest authority, he says, city police officers necessarily have authority to investigate and seek warrants for crimes occurring anywhere in the county.

But his authority to make certain arrests in Houston County does not "compel the conclusion" that he has authority for the *non-arrest* activity at issue here. *See Rich*, 841 F.2d at 1564. In fact, embracing his argument would, practically speaking, make the statutory limits a dead letter. As already discussed, Alabama's statutory scheme generally cabins a city officer's authority, limiting their operations to a few miles beyond the city limits. Under Ash's theory, however, a city police officer has county-wide authority to carry out nearly the full range of law enforcement duties (investigating crime, obtaining warrants, and making arrests)—regardless of *any* connection to the city the officer serves. That interpretation would make the arrest exception swallow the rule.

Contrary to Ash's position, the statutory scheme anticipates that a city officer can make an arrest outside his city's ordinary jurisdiction only for criminal activity that partly unfolded inside his jurisdiction. *Cf. Edwards v. City of Fairhope*, 945 So. 2d 479, 484 (Ala. Crim. App. 2006) (city officer had authority to arrest a person for DUI in a neighboring city after the driver passed through the officer's city). Here, though, Ash presents no evidence of any criminal conduct by

9

Robinson within his jurisdiction.  Ash has thus failed to show that he acted within the scope of his authority.

## B.

We next consider Ash's argument that discretionary-function immunity protects him from suit on Robinson's tort claims.  Under Alabama law, an officer "shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function *within the line and scope of his or her law enforcement duties*."  Ala. Code § 6-5-338(a) (emphasis added).  But as already discussed, Ash has acted beyond the scope of his authority by investigating and obtaining a search warrant for alleged criminal conduct that took place outside of his jurisdiction.  *See Moore*, 852 So. 2d at 91–92.  So he "may not assert any privilege that might otherwise inure to him in his role as a police officer."  *Id.* (quoting *Newton*, 695 So. 2d at 1217).

## C.

Having concluded that Ash's conduct was beyond the scope of his authority, we can go no further.  *Estate of Cummings*, 906 F.3d at 943–44.  After all, our jurisdiction for this interlocutory appeal is limited: "the denial of a qualified immunity defense is the only procedural vehicle a plaintiff can use to bring to us at the pretrial stage, instead of after final judgment, any question relating to the merits."  *Hartley v. Parnell*, 193 F.3d 1263, 1271 (11th Cir. 1999).  Ash "failed to

10

satisfy his threshold burden," and this "holding exhausts our jurisdiction under the collateral-order doctrine." *Estate of Cummings*, 906 F.3d at 944. To address the legality of Ash's actions "would be an inappropriate adventure into the merits of the action." *Id.* (quotation marks omitted).

## IV.

We **AFFIRM** the denial of summary judgment based on qualified immunity and discretionary-function immunity.